James D. Gardner (8798)
Stewart O. Peay (9953)
M. Lane Molen (11724)
Snell & Wilmer L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
jgardner@swlaw.com
speay@swlaw.com
lmolen@swlaw.com

*Attorneys for Defendants Wells Fargo Bank, N.A., LaSalle Bank N.A., Bank of America, N.A., and Norwest Mortgage, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BRYAN TOONE and JoLYNNE TOONE,**<br><br>             Plaintiff,<br><br>v.<br><br>**WELLS FARGO BANK, N.A.; PREMIER MORTGAGE CORP. OF AMERICA; ACCUBANK MORTGAGE CORPORATION DBA ACCUMORTGAGE CORPORATION; NORWEST MORTGAGE, INC.; LaSALLE BANK N.A.,** as Trustee**; BANK OF AMERICA, NA; eTITLE INSURANCE AGENCY; LUNDBERG & ASSOCIATES; KENT W. PLOTT; MARK S. MIDDLEMAS; DOES 1-50;**<br><br>             Defendants. | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>Case No. 2:11-cv-00170<br><br>Honorable Ted Stewart |

12519804

Pursuant to DUCivR 7-1, Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), LaSalle Bank, N.A., Bank of American, N.A. and Norwest Mortgage, Inc. (collectively "Wells Fargo Defendants"), through counsel, respectfully submit this *Memorandum in Support of Motion to Dismiss*, as against the Complaint of Plaintiffs Bryan Toone and JoLynne Toone ("Plaintiffs"). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## SUMMARY

This Court should dismiss all causes of action against the Wells Fargo Defendants from Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. The Complaint concerns Plaintiffs' home loan. After willingly taking on a home loan that they ultimately could not afford, Plaintiffs defaulted on the loan. Plaintiffs now have asserted a series of unsustainable claims against their lender and its loan servicer in an attempt to hold them liable for Plaintiffs' inability to comply with the terms of the loan. There is no basis in law, however, for this attempted shift in responsibility.

Plaintiffs have alleged various wrongdoings in connection with their application for (and eventual rejection of) a modification of the terms of their loan. For the following reasons, each of Plaintiffs' causes of action against the Wells Fargo Defendants fails as a matter of law:

- Plaintiffs' First Cause of Action for declaratory judgment contains numerous allegations of wrongdoing under several legal theories. Each of plaintiffs' theories, however, fails as a matter of law. First, Plaintiffs' "show me the note" theory has been rejected by this Court on numerous occasions. Likewise, Plaintiffs have not identified any theory that would allow them to quiet title in their names when they are in default on an appropriately recorded trust deed. Plaintiffs' theory that the order in which the beneficiaries of the trust deed took certain ministerial actions before foreclosing on the trust deed somehow nullifies the trust deed has been repeatedly been rejected by numerous courts. Contrary to

12519804

Plaintiffs' claim, Wells Fargo was not required to modify the Toones' decade-old loan simply because the Toones could not make their monthly payments. Plaintiffs cannot prevail on their "fraud on the bankruptcy court" theory because their allegations related to the bankruptcy court proceedings do not demonstrate that fraud was committed on that court. Finally, eTitle was properly substituted in as trustee and securitization of the Loan does not prevent a non-judicial foreclosure.

- Plaintiffs' Second Cause of Action, for violations of the Fair Debt Collection Practices Act (the "FDCPA") fails because the Wells Fargo Defendants do not qualify as "debt collectors" and therefore are not subject to the provisions of the FDCPA.

- Plaintiffs' Third Cause of Action, for violations of the Utah Consumer Sale Practices Act ("UCSPA") fails because mortgages are not subject to the UCSPA.

- Plaintiffs' Fourth Cause of Action for breach of duty is not alleged against the Wells Fargo Defendants. (Compl., ¶¶ 63-68.)

- Plaintiffs' Fifth Cause of Action, for breach of contract and breach of the covenant of good faith and fair dealing fails as a matter of law because the Note and the Trust Deed allowed for the sale of the Note, and securitization does not violate any terms of the parties' agreement.

- Plaintiffs' Sixth Cause of Action for violations of Real Estate Settlement Procedures Act ("**RESPA**") fails because Plaintiffs did not plead that the Wells Fargo Defendants' alleged violations of RESPA damaged Plaintiffs or that Wells Fargo has a pattern of practice of knowingly and willingly violating RESPA.

In summary, each of Plaintiffs' Causes of Action fails as a matter of law. Accordingly, Plaintiffs' claims against the Wells Fargo Defendants should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## FACTS

1. In 1998, Plaintiffs borrowed money on a note ("Note") from Premier Mortgage Company of America (the "Loan"). (A copy of the Note is attached hereto as Exhibit A.)[1] This Loan was secured by a trust deed ("Trust Deed") for the property located at 179 West Paxton Avenue, Salt Lake City, Utah ("Property"). (Compl., ¶13.) (A copy of the Trust Deed is attached hereto as Exhibit B.)

2. The Loan was serviced by Wells Fargo. (Compl., ¶15.)

3. In 2010, Wells Fargo sent notice to the Toones that they were in default on the Note. (Compl., ¶18.) Subsequently, the trustee, eTitle Insurance Agency ("eTitle"), served and recorded notices of default and trustee's sale. (Compl., ¶41.)

4. The Wells Fargo Defendants then initiated foreclosure proceedings on the Property. (Compl., ¶25.)

5. The Toones' loan was not modified under HAMP. (Compl., ¶26.)

6. The Toones declared Chapter 7 bankruptcy ("Bankruptcy Action"). (Compl., ¶27.)

7. Several of the defendants in this action moved to have the automatic stay prohibiting foreclosure on the Property lifted in the Bankruptcy Action. (Compl., ¶28.)

8. The bankruptcy court lifted the automatic stay and the foreclosure was allowed to proceed. (Compl., ¶¶ 32-33, 44.)

---

[1] "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384 (10th Cir. 1997).

12519804

4

**ARGUMENT**

The Wells Fargo Defendants are entitled to dismissal of Plaintiffs' claims with prejudice because they each fail as a matter of law for the following reasons.

**I.      Plaintiffs Fail to State a Claim for Declaratory Judgment.**

Plaintiffs claim they are entitled to a number of declarations from this Court, the result being to free them of their loan obligations and to invalidate the Trustee's sale. All of Plaintiffs' claims for declaratory relief, however, fail as a matter of law. Each of Plaintiffs' claims is based on legal theories that have been rejected by this Court or are otherwise deficient. As a result, Plaintiffs' Cause of Action for Declaratory Judgment fails as a matter of law and should be dismissed for the following reasons:

*A.      Defendants are not Required to Produce the Original Note or Trust Deed.*

First, Plaintiffs ask for a declaration that the Wells Fargo Defendants cannot produce the original Note or the Trust Deed. (Compl., ¶¶ 50(a)-(f).) This does not state a cognizable claim for relief because there is no requirement under Utah law that would require the Wells Fargo Defendants to produce an original of the Note and/or Trust Deed in order to carry out a non-judicial foreclosure. The legal theory underpinning this claim has already been rejected by this Court. Defendants are not required to "show the original note" because the non-judicial foreclosure power arises out of the deed of trust, not out of the note. See Utah Code Ann. § 57-1-23. In Marty v. Mortgage Electronic Registration Systems, et al., this Court flatly rejected the "show me the note" argument, agreeing with another District Court's reasoning that "because a Trustee's sale is not an action to enforce the note, but rather an exercise of the power of sale upon default, the note did not need to be produced." 2010 U.S. Dist. LEXIS 111209, No. 1:10-cv-00033 CW, fn 42 (D. Utah Oct. 19, 2010) (unpublished) (citing Maxa v. Countrywide Loans, Inc., 2010 U.S. Dist. LEXIS 72521 (D. Ariz. July 16, 2010));[2] see also Diessner v. Mortgage Elec. Registration Sys., 618 F. Supp. 2d 1184 (D. Ariz. 2009) (unpublished) (observing that

---

[2] Copies of all unpublished decisions cited herein are attached hereto as Exhibit C.
12519804

5

district courts "have routinely held that Plaintiff's 'show me the note' argument lacks merit"); Ricotta v. Ocwen Loan Servicing, LLC, 2008 WL 516674 (D. Colo. 2008) (unpublished) (holding that the Deed of Trust, not the note, encumbers the property's title); Lopez v. Chase Home Finance, LLC, Case No. CV F 09-0449 LJO GSA, 2009 U.S. Dist. LEXIS 34647, at *13 (E.D. Cal. Apr. 24, 2009) (unpublished) (plaintiff's "promissory note possession notion is frivolous").  As a result, no defendant needs to produce the Note, original or otherwise.  Neither is there any statutory requirement that any of the defendants needs to produce the original Trust Deed.  It is a recorded document, the authenticity of which has not been disputed.  (See Ex. B).

   **B.**  *The Trust Deed and Note cannot be Split.*

  Plaintiffs seek a declaration that the Note has been "separated from the Trust Deed, and is no longer enforceable," and that they are thus entitled to "quiet[] title in the Toones Property [*sic*] free and clear of the Toones' Trust Deed."  (Compl., ¶ 50(f)-(g).)  This claim fails as a matter of law because this Court has specifically considered the theory advanced by Plaintiffs and decisively held that under Utah law, the Note and the Trust Deed cannot be split and a change of ownership does not impair the security interest of the Trust Deed.  See Rodeback v. Utah Fin., 2010 U.S. Dist. LEXIS 69821, *9 (D. Utah July 13, 2010) (unpublished) ("Utah Code section 57-1-35 makes it impossible to split the note from the security interest.  Therefore, the Trust Deed is valid even if the note changed ownership."); King v. American Mortgage Network, Case No. 1:09-cv-162, 2010 WL 3516475, *3 (D. Utah, Sept. 2, 2010) (unpublished) (rejecting the argument that defendants "do not have authority to begin foreclosure of the Trust Deed on the Property because the Note and Trust Deed have been 'split'")  Witt v. CIT Group/Consumer Fin., Inc., 2010 U.S. Dist. LEXIS 117915, * 11 (D. Utah Nov. 5, 2010) (unpublished) (stating that the "notion that the note has been 'split' is squarely at odds with the firmly established presumption that a transfer of the note carries with it the deed of trust, without any formal assignment.").  Furthermore, by Utah statute, "[t]he transfer of any debt secured by a trust deed shall operate as a transfer of the security therefor."  Utah Code § 57-1-35.  The statute does not

12519804

provide for any exceptions. Thus, each successor to the Note also receives the benefit of the security. So, by operation of the law, the Note cannot be split from the Trust Deed.

### C. Plaintiffs Were not Entitled to a Loan Modification and Cannot Assert a Private Right of Action under HAMP.

Plaintiffs seek a declaration that Wells Fargo was required to, but failed to, modify the Toones' loan under HAMP. (Compl., ¶ 26, 50(p).) This claim, too, must fail as a matter of law. Claims for modification under HAMP do not state a cognizable claim for relief because Plaintiff is not entitled to modification under HAMP. HAMP does not require lenders to modify loans. Rather, it merely requires lenders "to consider borrowers for loan modifications and suspend foreclosure activities while a given borrower [is] being evaluated for a modification." Marks v. Bank of America, 2010 U.S. Dist. LEXIS 61489, n.3, *14-15 (D. Ariz. June 22, 2010) (unpublished)(emphasis added). No rights are conferred upon borrowers under HAMP, and HAMP did not entitle Plaintiff to a loan modification from SunTrust. Id. at *8. Further, "there is no private right of action under HAMP." Shurtliff v. Wells Fargo Bank, N.A., 2010 U.S. Dist. LEXIS 117962, *10 (D. Utah Nov. 5, 2010) ("As there is no private right of action under HAMP, any claims that Plaintiff may bring under that program must be dismissed.") (unpublished); see also Vazquez v. Bank of Am. Home Loans, 2010 U.S. Dist. LEXIS 86654, *4 (D. Nev. Aug. 23, 2010) (stating that "there is no private right of action under HAMP") (unpublished). Since there is no private right of action under HAMP, "any claims that Plaintiff may bring under that program must be dismissed." Shurtliff, 2010 U.S. Dist. LEXIS 117962 at *10.

### D. There Was No Fraud Committed on the Bankruptcy Court.

Plaintiffs allege that Lasalle, Bank of America and other defendants "committed fraud on the bankruptcy court in connection with the Motion for Relief from Stay" in the Bankruptcy Action. (Compl., ¶50(q)-(r).) A party may bring "an independent equitable action for relief from a prior judgment" where the judgment was obtained by fraud on the court. St. Pierre v. Edmonds, 645 P.2d 615, 618 (Utah 1982). To prevail on a fraud on the court claim the

12519804

7

"[p]laintiff must have a good claim or defense which he has been prevented from presenting in the original suit. Plaintiff's plight must not be the result of his own negligence, and the facts constituting the fraud must be newly discovered after the decree." Anderson v. State, 238 P.2d 238, 523 (Utah 1925). Here, Plaintiffs have not identified what claim or defense they were prevented from raising at the Bankruptcy Action because of the alleged fraud. Likewise, Plaintiffs have not identified what newly discovered evidence would have allowed them to defeat the defendants' motion to lift the stay in the Bankruptcy Action. Rather, Plaintiffs merely allege that certain factual statements made in the motion to lift the automatic stay were false and that the defendants lacked standing to make those claims. In other words, Plaintiffs want to this Court to review the same factual record that the bankruptcy court reviewed, or could have reviewed, and determine that certain statements are false. This Court should not engage in second guessing the bankruptcy court, particularly given that the Toones were not prevented from raising any legitimate claims or defenses in the Bankruptcy Action.

### E.   eTitle was Properly Substituted in as Trustee.

Plaintiffs claim that nonjudicial foreclosure proceedings were inappropriate because eTitle was not properly substituted as successor trustee under the Trust Deed. (Compl., ¶ 50(h)-(o).) Plaintiffs appear to contend that the Wells Fargo Defendants lacked authority to cause the Substitution of Trustee to be executed and to proceed with the non-judicial foreclosure because the Loan had been securitized.[3] The mere fact that the Loan has been securitized does not impair the Defendants' ability to cause non-judicial foreclosure proceedings to take place. See Foster v. BAC Home Loan Servicing, LP, No. 2:10-cv-247 TS, 2010 U.S. Dist. LEXIS 100038, *7 (D. Utah, Sept. 22, 2010) (unpublished) (holding that claims based on the notion that the defendants "do not have the authority to assert any present default on the Note, or power of sale under the deed of trust because they have securitized the deed of trust. . . must be rejected");

---

[3] The Substitution of Trustee clearly identifies Bank of America as the beneficiary due to successor by merger to LaSalle, as trustee for the pooled Trust holding the Loan. (See Substitution of Trustee, attached as Exhibit D.) The Note shows a clear endorsement to LaSalle, as trustee. (Note, p. 2). .
12519804

Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc., No. 2:10-cv-340 TS, 2010 U.S. Dist. LEXIS 99482, *7-8 (D. Utah, Sept. 20, 2010) (unpublished) (holding that the defendant's right to foreclose was not changed "because the underlying note was securitized").

Further, Plaintiffs do not allege that their ability to meet their loan obligations was impaired as a result of the transfers of the interest in their Loan or by its securitization.[4]  Rather, they allege that their Loan was serviced by Wells Fargo. (Compl., ¶ 15.)  Thus, Plaintiffs knew who to make monthly payments to.  Plaintiffs' obligations under the Loan remain the same regardless of who seeks to enforce the Note or who executed the Substitution of Trustee.[5]  Thus, to the extent cognizable claims concerning the transfer of the interest in the Note and/or the recording of the Substitution of Trustee were to exist, they could not in any event be brought by Plaintiffs, who can allege no damages as a result.

In accordance with the foregoing, Plaintiffs' First Cause of Action fails as a matter of law and should be dismissed.

## II.     Plaintiffs Fail to State a Claim for Violation of the FDCPA.

Plaintiffs' Second Cause of Action alleges a violation of the Fair Debt Collection Practices Act (the "FDCPA").  This claim fails because the Wells Fargo Defendants do not meet the statutory definition of "debt collector," a prerequisite to finding a violation.  See Burnett v. Mortg. Elec. Registration Sys., Inc., 2009 WL 3582294, *2 (D. Utah 2009) (unpublished—see Ex. D).  In Burnett this Court observed that under the FDCPA:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of

---

[4] This Court has observed that "securitization merely 'creates a separate contract, distinct from Plaintiff's debt obligations under the reference credit (i.e. the Note).'" Commonwealth Property Advocates, LLC v. First Horizon Home Loan Corp., 2010 U.S. Dist. LEXIS 121743, *6 (D. Utah, Nov. 16, 2010) (unpublished) (quoting Larota-Florez v. Goldman Sachs Mortgage Co., 2010 U.S. Dist. LEXIS 35099, *16 (E.D. Va., April 8, 2010) (unpublished).  This "new contract that is the result of securitization does not free [Plaintiffs] from the express terms of [the Deed of Trust]."  See id.

[5] Indeed, the Trust Deed contemplates such an eventuality.  It provides that "The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower."  Trust Deed, § 19.

12519804

> any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

Id. (quoting 15 U.S.C.§ 1691a(6)). In this case, the Wells Fargo Defendants fall within a statutory exception to "debt collector," excluding from the definition of "debt collector" "any person collecting or attempting to collect any debt owed . . . another [if] a debt was not in default at the time it was obtained by such person." Ricotta v. Ocwen Loan Servs., LLC, 2008 WL 516674, *6 (D. Colo.) (citing 15 U.S.C. § 1692a(6)(F)) (unpublished—see Ex. D). "This exception is apparently intended to exempt from the FDCPA's requirements persons who acquire a debt for reasons other than for delinquency-based debt-collection purposes." Id.; see also Brown v. Morris, 243 Fed.Appx. 31, 34–35 (5th Cir. 2007); Diessner v. Mortg. Elec. Registration Sys., Inc., 618 F.Supp.2d 1184, 1189 (D.Ariz. 2009) (holding that "mortgagees and their assignees, including mortgage servicing companies, are not debt collectors under the FDCPA when the debts were not in default when taken for servicing.") As Plaintiffs point out in their complaint, Wells Fargo is the servicing agent for the note and not a "debt collector," "The Toone Note has been serviced by Wells Fargo." (Compl., ¶15). Plaintiffs also explain that Wells Fargo is the entity responsible for tracking the payments made on the Note. (Compl., ¶¶ 15-20.) Thus, Wells Fargo's principal purpose is not to collect the debt but is, as Plaintiffs specifically state in their complaint, to service the Note. Likewise, there is no allegation that LaSalle or Bank of America acquired the rights to the Note for collection purposes. As a result, plaintiffs' FDCPA claim against the Wells Fargo Defendants should be dismissed with prejudice.

**III.   Plaintiffs Fail to State a Claim for Violation of the Utah Consumer Sales Practices Act.**

Plaintiffs' Third Cause of Action is for unspecified violations of the Utah Consumer Sales Practices Act (the "UCSPA"), Utah Code Ann. § 13-11-5. Plaintiffs' allegations of violations of the UCSPA are conclusory and lack any specificity as to what alleged misconduct Plaintiffs believe constitute a violation of the UCSPA and by whom such alleged misconduct

was committed.[6] In any event, Plaintiffs' claims under the UCSPA fail as a matter of law for at least three reasons.

First, the Toones' Note was not a "consumer transaction" within the meaning of the UCSPA, as Plaintiffs allege. (Compl., ¶ 60.) A mortgage loan is not a "consumer transaction" within the scope of the Act. See Utah Code Ann. §13-11-3-(2). Rather, a "consumer transaction" is "a sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible (except securities and insurance)." Id.

Second, none of the Wells Fargo Defendants is a "supplier" within the meaning of the UCSPA, as Plaintiffs allege. (Compl., ¶ 60.) A "supplier" means "a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer." Utah Code Ann. §13-11-3-(6). As set forth above, a mortgage loan is not a "consumer transaction" and thus none of the Wells Fargo Defendants can be characterized as a "supplier" for the purposes of the UCSPA. Even if the loan was a consumer transaction, the Wells Fargo Defendants could not be a supplier in this case because none of the Wells Fargo Defendants were involved in the initial loan transaction.

Third, Plaintiffs' UCSPA claims fail for the additional reason that the UCSPA specifically states that it does not apply to conduct regulated by other state or federal law. See Utah Code Ann. §13-11-22(1)(a). Thus, to the extent Plaintiffs' allegations are contemplated under RESPA, HAMP, or any other federal statutory regime, they cannot be subject to relief under the UCSPA. Further, Utah has comprehensive regulations related to foreclosures and trust deeds. Burnett v. Mortg. Elec. Registration Sys., 2009 U.S. Dist. LEXIS 100409, * 12-14 (D. Utah Oct. 26, 2009) (unpublished) (dismissing UCSPA claim, recognizing that the UCSPA did not apply to similar claims because Utah law had comprehensive regulations related to foreclosures and trust deeds). As a result, this Court should dismiss Plaintiffs' Third Cause of

---

[6] Specifically, Plaintiffs have not alleged any specific unconscionable conduct. See, e.g., Kee v. R-G Crown Bank, 656 F. Supp. 2d 1348, 1356 (D. Utah 2009) (dismissing USCPA claim on a motion to dismiss where the acts alleged were not unconscionable).

12519804

11

Action.

### IV. Plaintiffs Fail to State a Claim for Breach of Contract or Breach of the Covenant of Good Faith and Fair Dealing.

Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing fail as a matter of law. Although it is unclear what Plaintiffs are even alleging in this claim,[7] it appears that Plaintiffs are claiming that the sale and the securitization of the Note by Norwest, LaSalle and BofA was in breach of the terms or the implied covenant of the Note or the Trust Deed. Contrary to Plaintiffs' claim, however, the Note and the Trust Deed expressly provide that they can be transferred. The Note states as follows: "I understand that the Lender may transfer this Note." (Note, ¶ 1). The Trust Deed states "The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower." (Trust Deed, ¶ 19.)

To the extent that Plaintiffs' contract claims are based on their allegation that the Note was securitized, their claim likewise fails as a matter of law. As this Court has recognized, securitization is lawful and does not affect plaintiffs' obligations pursuant to the Note. In Marty v. Mortg. Elec. Registration Sys., this Court explained that a lender can delegate its rights under a trust deed "to a nominee to act on the lender's behalf, or on behalf of the lender's successors and assigns, *regardless of how many successors and assigns there may be*." See 2010 U.S. Dist. LEXIS 111209, *1, 20 (D. Utah Oct. 19, 2010).[8] As this Court has recognized, "there is no legal authority that the sale or pooling of investment interests in an underlying note can relieve borrowers of their mortgage obligations or extinguish a secured party's rights to foreclose on secured property." Taylor v. Citimortgage, Inc., 2010 U.S. Dist. LEXIS 119808, *9 (D. Utah

---

[7] Plaintiffs do not point to a specific provision or even a specific agreement that is the basis of this claim. This claim is only alleged against Norwest, LaSalle and BofA of the Wells Fargo Defendants.

[8] In fact, "foreclosures are routinely and justifiably conducted by trustees of securitized mortgages." Larota-Florez v. Goldman-Sachs Mortgage Co., 719 F. Supp. 2d 636, 641 (E.D. Va. 2010). This Court has explained that securitization merely creates "a separate contract, distinct from Plaintiff's debt obligations under the reference credit (i.e. the Note)." Commonwealth Prop. Advocates, LLC v. First Horizon Home Loan Corp., 2010 U.S. Dist. LEXIS 121743, *6 (D. Utah Nov. 16, 2010).

12519804

Nov. 10, 2010).[9]

V.    **Plaintiffs Fail to State a Claim for Violation of RESPA.**

Plaintiffs Sixth Cause of Action for violations of the Real Estate Settlement Procedures Act ("RESPA") fails because Plaintiffs' only alleged damages in this action result from Wells Fargo's foreclosing on the Property and not as a result of Wells Fargo's alleged violations of RESPA.  "Plaintiff has not alleged any actual damages resulting from the failure to respond or delay in responding to the QWR.  Therefore, this claim fails."  Thayne v. Taylor, Bean & Whitaker Mortgage Co., 2010 U.S. Dist. LEXIS 94721, *7 (D. Utah September 10, 2010). Plaintiffs' failure to make their mortgage payments and the resulting foreclosure on their home caused their damages.  "Plaintiff faces foreclosure and the consequences thereof including a deficiency judgment because of his failure to pay his mortgage.  Plaintiff also chose to bring this lawsuit instead of curing his default under the terms of the loan."  King v. American Mortgage Network, Inc., 2010 U.S. Dist. LEXIS 92210, *7 (D. Utah September 2, 2010).  There are no allegations in Plaintiffs' complaint that their inability to bring their mortgage current was caused by a lack of knowledge on their part or Wells Fargo's alleged violations of RESPA.

Plaintiffs, apparently recognizing that Wells Fargo did not cause them to go into default on the Note, attempt to plead statutory damages under RESPA.  Plaintiffs, however, make only conclusory statements and fail to plead any facts that actually support their claim for statutory damages.  The Court "need not accept conclusory allegations without supporting factual averments" in granting a motion to dismiss.  Estrada v. Aurora Loan Services, LLC, 2010 U.S. Dist. LEXIS 124865, *5, (D. Utah November 23, 2010) (quoting GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997)).  RESPA allows for statutory damages when a plaintiff proves a "pattern or practice of noncompliance."  See 12 U.S.C. §

---

[9] Selling the Note on the secondary market does not extinguish the note holders' right to foreclose by separating the deeds of trust from the notes.  Utah statute provides that "[t]he transfer of any debt secured by a trust deed shall operate as a transfer of the security therefore."  UTAH CODE ANN. § 57-1-35.  Courts have found that this statute "makes it impossible to split the note from the security interest," even if the note changes ownership.  Rodeback v. Utah Fin., 2010 U.S. Dist. LEXIS 69821, *9 (D. Utah July 13, 2010).

12519804

2605(f)(1)(B). Plaintiffs have failed to plead any facts that might support such a statutory damages claim here. Plaintiffs baldly assert that "[t]he nature and extent of [Wells Fargo's RESPA] violations, plus the manner in which they failed to respond to QWRs from other borrowers, demonstrate that they are knowing and willful and that Wells Fargo has a pattern and practice of knowingly and willfully violating RESPA with respect to the QWRs." (Compl. ¶42.) These are the exact type of conclusory statements that a plaintiff may not rely upon to overcome a motion to dismiss.

      Finally, Plaintiffs' communications with Wells Fargo were not QWRs under the statute or the governing case law. "A QWR relates only to the 'servicing' of the loan, which is defined as requests relating to the 'receiving of any scheduled periodic payments from a borrower pursuant to the terms of any loan…and making the payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." King v. American Mortgage Network, Inc., 2010 U.S. Dist. LEXIS 92210, *6 (D. Utah September 2, 2010). The Court in the King matter found that the plaintiff in that matter had not sent QWRs but rather plaintiff's letter "did not allege any error or request [] information about servicing the Loan. Rather, it was an accusation of unlawful conduct, a demand to produce loan documents for inspection, and a threat of legal action, which contained no reference to the servicing of the Loan." Plaintiffs' allegations in their Complaint demonstrate that their communications with Wells Fargo were not information requests but rather threats of legal action and complaints. For instance, "[t]he Toones wrote and telephoned Wells Fargo numerous times complaining of these inaccuracies and problems and asking that their accounting be cleaned up." (Compl., ¶19.) Later in the Complaint, plaintiffs state that they "complain[ed] about the incorrect accounting, demanding identification of the true owner of their Note and Trust Deed, and the like and a retraction of the foreclosure proceedings." (Compl., ¶35.) Thus, like the plaintiff in King, the Toones did not sent Wells Fargo QWRs but rather merely sent complaints to Wells Fargo or demanded information that is not subject to RESPA.

## CONCLUSION

This Court should dismiss with prejudice Plaintiffs' attempt to blame the Wells Fargo Defendants' for Plaintiffs' own failure or inability to make payments on a decade old mortgage. As demonstrated above, all of Plaintiffs' numerous theories have been rejected by this or other Court. This Court should follow this precedent and reject Plaintiffs' claims as a matter of law.

DATED this 22nd day of February, 2011.

            Snell & Wilmer L.L.P.


            /s/ James D. Gardner
            James D. Gardner
            Stewart O. Peay
            M. Lane Molen
            *Attorneys for Defendants Wells Fargo Bank,*
            *N.A., LaSalle Bank N.A., Bank of America, N.A.,*
            *and Norwest Mortgage, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of February, 2011, a true and correct copy of the foregoing to be served via the CM/ECF system, which provided service on the following:

Brian W. Steffensen
Steffensen Law Office
448 East 400 South, Suite 100
Salt Lake City, Utah 84111
*Counsel for Plaintiffs*

Richard Gunnerson
3269 South Main Street #100
Salt Lake City, UT 84115
*Counsel for eTitle Insurance Agency,*
*Lundberg & Associates, Kent W. Plott, and*
*Mark S. Middlemas*

/s/ James D. Gardner

12519804