**Brian W. Steffensen (3092)**
**STEFFENSEN ❖ LAW ❖ OFFICE**
448 East 400 South, Suite 100
Salt Lake City, Utah 84111
Telephone (801) 485-3707
Facsimile (801) 485-7140
Attorneys for Plaintiffs

### IN THE UNITED STATES DISTRICT COURT
### IN AND FOR THE STATE OF UTAH

| | |
|---|---|
| Bryan Toone and JoLynne Toone<br><br>v.<br><br>Wells Fargo Bank. NA;<br>Premier Mortgage Corp. Of America;<br>Accubank Mortgage Corporation dba<br>Accumortgage Corporation;<br>Norwest Mortgage, Inc.;<br>LaSalle Bank N.A., as Trustee;<br>Bank of America, NA;<br>eTitle Insurance Agency;<br>Lundberg & Associates;<br>Kent W. Plott;<br>Mark S. Middlemas;<br>Does 1-50 | Plaintiffs' Memorandum in Opposition to the Motion to Dismiss filed by the Wells Fargo Related Defendants<br><br><br><br>Civil No. 2:11-cv-00170-TS<br><br>Judge Ted Stewart |

<u>**The Toones Have Filed a First Amended Complaint**</u>.  In reviewing the  Motion to Dismiss filed by Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), LaSalle Bank, N.A., Bank of American, N.A. and Norwest Mortgage, Inc. (collectively "Wells Fargo Defendants"), the Toones decided :

(a) that they would not pursue the declaratory relief in paragraph 50, subparagraphs (a) - (g) – and make it clear that they are not trying to have the Toone Note and Trust Deed declared null and void;

1

(b) that they should make it clear that their "Hamp" related claims are part of the breach of contract and representation claim for relief,

( c) that they should make their challenge to the validity of the actions of LaSalle/ BOA and eTtitlle more clear, and

(d) that they should add claims and parties arising from actions taken after the original complaint herein was filed.

In order to accomplish this,  the Toones have filed a First Amended Complaint herein.

The Wells Fargo Defendants' Motion to Dismiss – as applied to the First Amended Complaint – should be denied because:

A.    The gravamen of this complaint is the allegation that the purported endorsements on the Toone Note are defective for many reasons, such that neither LaSalle nor BOA ever legally became the owner/ endorsee of the Toone Note.  If that is true – which for the purposes of this Motion to Dismiss must be deemed to be true – then eTitle was not properly and validly appointed Substitute Trustee.  If eTitle never legally became the Substitute Trustee under the Toone Trust Deed, then the commencement of the foreclosure, the motion to lift stay, the purported foreclosure and then the eviction action were and are all wrongful and null and void.

B.    The Toones are not going to pursue any exotic claim that the note and trust deed became separated, that the original note has to be found, or that their note and trust deed should be extinguished.  The relief sought by the Toones herein will not preclude the true owner of the Toone Note from stepping  forward in the future through properly authorized representatives and pursuing a properly authorized foreclosure.

C.     The facts alleged in the Complaint and now First Amended Complaint must be deemed to be true, and they fully support the claims for relief as now set forth in the First Amended Complaint.

D.     With respect to the Toones' request for Declaratory Relief, the Wells Fargo Defendants' Motion to Dismiss addressed only the old paragraphs 50 (a) - (g) – which have all been eliminated in the First Amended Complaint.   Although the Wells Fargo Defendants asked the Court to dismiss all of the declaratory relief paragraphs, the Motion failed  to articulate any reason why old paragraphs 50(h) - (w) were improper.  Because the Court has been given no reason why any of this remaining declaratory relief is improper, the motion must fail with respect to the relief sought in the new paragraph 50.

E.     If the allegations of the Complaint and now First Amended Complaint are deemed to be true, then the defendants did commit fraud on the Bankruptcy Court.  The Toones are not asking this Court to set aside the lift stay order.  Rather, they are asking for damages under the FDCPA and/or the UCSPA arising from this illegal and unlawful debt collection activity.  Wells Fargo's argument entirely misses the boat in this regard.

F.     If the allegations of the Complaint and now First Amended Complaint are deemed to be true, then eTitle was not legally and effectively appointed Substitute Trustee under the Toone Trust Deed.  Wells Fargo again mischaracterizes the Toones' claims.  eTitle was not improperly appointed Substitute Trustee "because the loan had been securitized." That is not the Toones' argument at all.  See A above.

G.     Because every one of the endorsements on the Toone Note was defective, only Premier is exempt from the provisions of the FDCPA.  Accubanc, Norwest, LaSalle and BOA never

3

acquired the Note when it was not in default – because given the deemed admitted allegations of the Complaint and now First Amended Complaint, they never legally acquired it at all.  These entities are not protected by the exemption.  They are all debt collectors under the FDCPA.

This includes Wells Fargo.  A servicer for the original creditor and for a subsequent owner of the debt who acquired the debt when it was not in default, is exempt.  However, when Wells Fargo performed servicing for Accubanc, Norwest, LaSalle and BOA – it was no longer exempt because they had not in fact acquired any interest in the Toone Note.     Wells Fargo lost its exemption when the endorsements were not properly done and were illegal, invalid and void.

The FDCPA prohibits (a) any conduct the natural consequence of which is to harass, oppress or abuse any person (15 USC 1692d), (b) the use of any other false, deceptive, or misleading representation (other than those listed in 1692d) or means in connection with debt collection (15 USC 1692e), ( c) making any false representation or use of any deceptive means to collect a debt (15 USC 1692e(10), utilizing any unfair or unconscionable means to collect or attempt to collect the alleged debt (15 USC 1692f) and the like.

The complaint alleges that the Toones were not in default on their loan but were and had been making reduced payments pursuant to an express agreement/ loan modification. And then the defendants wrongfully commenced foreclosure proceedings, forced the Toones into bankruptcy, did not tell the truth to the bankruptcy court and obtained a lift stay order, and then proceeded to foreclose on the Toones.  This course of events is chock full of shocking and outrageous violations of the FDCPA.  None of the defendants are immune therefrom.

4

H.    All defendants are subject to the UCSPA because (a) the loan to purchase a home for the

Toones was indisputably a consumer transaction, and (b) they are all suppliers in that they

engage in the "enforcement" of a consumer transaction.

The Utah Consumer Sales Practices Act applies to "consumer transactions," (UCA

13-11-3), and a loan to a consumer is clearly a transaction.  The lending of money to a consumer

for consumer purposes is the "sale ... or disposition of goods, services, or other property" – the

money given to the consumer in exchange for a note.  Numerous cases in other jurisdictions have

so held.  See *Lavinia v. Hoard Bank*, Clearinghouse No. 26,015 (Vt. Super. Ct. 1976)("Service

means to furnish and supply something needed or desired .... Thus anyone supplying money, a

need, would be one who serves"); *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776 (W.D.

Ky. 2003)(Credit is a Service); Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427 (E.D. Pa.

2002)(UDAP covers loans that finance goods or services for personal use)

The UCSPA defines suppliers as "a seller, lessor, assignor, offeror, broker, or other

person who regularly solicits, engages in, or **enforces consumer transactions**, whether or not he

deals directly with the consumer." (emphasis added)

Persons who collect consumer debt after the "initial loan transaction" are most certainly

suppliers under the UCSPA.


I.    Wells Fargo again mischaracterizes the Toones' breach of contract claim.  The Toones do

not think it was a breach of contract to sell the note and securitize it.  Rather, the Toones

allege that it was a breach of contract and the covenant of good faith and fair dealing to

agree to give the Toones a hamp modification, accept their modified payments, cause

them to believe that this was acceptable and would be fine, but at essentially the same time declare that the Toones were in default and had made no payments on the Note, and to commence and proceed to foreclose on their home, etc:

In this regard, the First Amended Complaint states as follows:

"16.    In the Spring of 2010, the Toones applied for and began a temporary loan modification under HAMPS.

17.    The Toones made all of the payments in a lower amount as agreed as per the Hamps temporary modification.

18.    Wells Fargo, however, failed to credit the Toones with these payments and began sending notices that the Toones were in default.  This violated the terms of the parties' agreement as modified via the Hamps Temporary Modification and the covenant of good faith and fair dealing. Given the representations, warranties and promises made to the Toones which induced them to enter into the Hamps Temporary Modification (i.e., that it would be acceptable to the Lender for the Toones to make the lower payments and have the foregone payment amounts added to the end of the loan, and the like, and that the Toones would remain in good standing under their loan) and pursuant to which the Toones began to make the lower "modified" payments as agreed, Wells Fargo, LaSalle and/or BOA were estopped from claiming a default under the Note and Trust Deed and from later pursuing a lift stay motion and proceeding to foreclose.

25.    In any event, even though the Toones were not in fact in default on the Toones' Note and Trust Deed, Wells Fargo, BOA and eTitle falsely asserted that the Toones were in default and purported to commence foreclosure proceedings against the Toones' Residence.  This caused the Toones to suffer extreme fear and emotional distress, as well as damaging their credit.

26.   Wells Fargo wrongfully refused to finalize a loan modification under the HAMP program with the Toones, even though the Toones by all indications qualified for a permanent modification.  This violated the promises, warranties and representations that were made to the Toones at the commencement of the modification process with respect to (a) the standards for qualifying for a modification, (b) the fact that if the Toones made their payments under the temporary, trial modification, the modification would be made permanent, and ( c) the other terms and conditions contained in the Wells Fargo modfiication program descriptions (both written and on the web).  The Toones suffered damage to their credit, were forced to take out bankruptcy, and are facing the loss of their home and the like.

27.   Because of the illegitimate and wrongful threatened loan foreclosure proceedings, the Toones filed for Chapter 7 bankruptcy.

73.   The actions of Premier, Accubanc, Norwest, LaSalle and BOA as alleged herein constitute a breach of contract and of the covenant of good faith and fair dealing."

J.    The Toones allege that Wells Fargo knowingly and intentionally failed to acknowledge and respond to the Toones' QWRs as required by the RESPA.  The Toones allege that this is part of Wells Fargo's pattern and practice of violating RESPA with respect to consumer's QWRs.  The Toones outline the manner in which they have been damaged in their First Amended Complaint.  This claim for relief is properly pleaded.  Wells Fargo argues that the QWRs were not proper QWRs under the statute – but without any foundation and contrary to the allegations of the complaint – which must be deemed to be true.-

The relevant paragraphs for the First Amended Complaint in this regard are:

19.     The Toones wrote and telephoned Wells Fargo numerous numerous times complaining of these inaccuracies and problems and asking that their accounting be cleaned up.  All such written requests were Qualified Written Requests under RESPA and also requests for validation under the FDCPA.  They also put Wells Fargo, LaSalle and BOA on notice that their actions were violating the terms of the loan – as "modified" – and that they were estopped from declaring a default under the circumstances.

20.     Wells Fargo, LaSalle and/or BOA did not properly respond to these QWRs as required by RESPA, did not stop declaring a default even though the Toones were making their modified payments as had been expressly agreed, and failed to correct the accounting which Wells Fargo claimed showed that payments were not properly being made and that the loan was in default. These actions not only violated RESPA, but also were breaches of the parties' agreements, and violations of the covenant of good faith and fair dealing.  This caused the Toones immense fear and emotional distress and ultimately drove them into bankrupty and a total loss of the semblance of good credit that they otherwise would have had.

35.     The Toones  sent numerous additional Qualified Written Requests (QWRs) under RESPA to Wells Fargo complaining about the incorrect accounting, demanding identification of the true owner of their Note and Trust Deed, and the like and a retraction of the foreclosure proceedings.

42.  Wells Fargo  failed to properly respond to any of the Toones' QWRs as required by RESPA, either with respect to timeliness or substantively.  The nature and extent of these violations, plus the manner in which they have failed to properly respond to QWRs from other borrowers,

demonstrate that Wells Fargo's RESPA violations are knowing and wilful and that Wells Fargo

has a pattern and practice of knowingly and wilfully violating RESPA with respect to QWRs.

43.     Under RESPA, if a servicer of a loan – which Wells Fargo is  – has received a QWR from

a borrower, the servicer can not proceed to collect payments on or otherwise seek to enforce the

terms of the loan unless or until the servicer has fully and properly complied with its RESPA

obligations with respect to each QWR.

44.     Despite having failed to properly address these QWRs, Wells Fargo has allowed eTitle

and Lundberg Associates to proceed with foreclosure activities and have continued to make

negative credit reporting about the Toones to various Credit Reporting Agencies.  eTitle

purported to foreclose on the Toones' residence on January 3, 2011. Lundberg, Gunnerson,

DeHann and Brigham Lundberg served the Toones with 5-day Notices to Vacate on or about

January 19, 2011, even though they knew from the institution of this action, that it was almost

certain that the purported foreclosure was void.  Lundberg, Gunnerson, DeHann and Brigham

Lundberg then filed an unlawful detainer/ eviction lawsuit against the Toones.

76.     Wells Fargo violated RESPA as outlined herein.  Those violations were knowing and

wilful and part of a pattern and practice of knowing and wilful RESPA violations by Wells

Fargo.  The Toones have suffered damages as a result in that (a) they were unable to get Wells

Fargo to realize and admit that the Toones had not failed to make payments as agreed – given the

fact that there was a trial modification in place, (b) the foreclosure proceeded unabated and

wrongfully, ( c) they were forced to try to obtain some protection through a bankruptcy – which

took a great deal of time and involved costs and fees, (d) they suffered severe credit damage, (e)

they were subjected to a fraudulent lift stay motion, (f) the foreclosure sale proceeded even

though the statute barred Wells Fargo from taking any steps to collect the debt while any QWR remained outstanding and unresponded  to, (g) the Toones experienced extreme frustration, anxiety, fear and emotional distress and (h) the Toones have been forced to incur legal costs and attorneys fees.

77.     In addition to the declaratory relief requested above, the Toones are entitled to an award of actual and full RESPA statutory damages per violation, costs and attorneys fees.

The QWRs described herein clearly related to servicing.  The elements of a claim for violation of RESPA are clearly all included and properly pleaded.

.

# CONCLUSION

The Toones have deleted from their First Amended Complaint the declaratory relief about which the Wells Fargo Defendants complained.  The remaining declaratory relief is proper and fully supported by the deemed admitted allegations of the First Amended Complaint.

In every other regard, the Motion to Dismiss is simply misplaced and unpersuasive and should be denied.

The Toones have raised serious, substantive challenges to the right of these entities to have done any of the acts which they committed with respect to the Toones' residence.  The Toones have set forth detailed factual bases for their claims. The Toones have articulated the

elements of the various claims for relief.  The motion to dismiss should be denied.

DATED this 15th day of April, 2011.

**STEFFENSEN ❖ LAW ❖ OFFICE**

__s/ Brian W. Steffensen ___
Brian W. Steffensen
Attorney for Plaintiffs