James D. Gardner (8798)
Stewart O. Peay (9584)
M. Lane Molen (11724)
Snell & Wilmer L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, Utah  84101-1004
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800
jgardner@swlaw.com
speay@swlaw.com
lmolen@swlaw.com

*Attorneys for Defendants Wells Fargo
Bank, N.A., Norwest Mortgage, Inc.,
LaSalle Bank N.A., and
Bank of America, N.A.*

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BRYAN TOONE and JoLYNNE TOONE,** | **JOINT MEMORANDUM** |
| Plaintiffs, | **(1) IN REPLY IN SUPPORT OF MOTION TO DISMISS; AND** |
| v. | |
| **WELLS FARGO BANK, N.A.; PREMIER MORTGAGE CORP. OF AMERICA; ACCUBANK MORTGAGE CORPORATION DBA ACCUMORTGAGE CORPORATION; NORWEST MORTGAGE, INC.; LaSALLE BANK N.A.,** as Trustee**; BANK OF AMERICA, NA; eTITLE INSURANCE AGENCY; LUNDBERG & ASSOCIATES; KENT W. PLOTT; MARK S. MIDDLEMAS; DOES 1-50;** | **(2) IN SUPPORT OF MOTION TO STRIKE FIRST AMENDED COMPLAINT**<br><br>Case No. 2:11-cv-00170-TS<br><br>Honorable Ted Stewart |
| Defendants. | |

12968327

Pursuant to DUCivR 7-1, Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), LaSalle Bank, N.A., Bank of America, N.A. and Norwest Mortgage, Inc. (collectively "Wells Fargo Defendants"), through counsel, respectfully submit this *Joint Memorandum (1) in Reply in Support of Motion to Dismiss; and (2) in Support of Motion to Strike*, as against the Complaint of Plaintiffs Bryan Toone and JoLynne Toone ("Plaintiffs"). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

I. **SUMMARY**

Whether taken from the original or amended complaint,[1] Plaintiffs' claims against the Wells Fargo Defendants fail as a matter of law. The facts underlying Plaintiffs' claims are not complicated. In 1998, Plaintiffs signed a note ("Note") that was secured by a trust deed ("Trust Deed") on their residence in Salt Lake City, Utah ("Property"). Plaintiffs were unable to make the payments on the Note and defaulted. Wells Fargo foreclosed on the Trust Deed. During the foreclosure process, in an attempt to delay the foreclosure, Plaintiffs declared bankruptcy. Upon a motion by Wells Fargo, the bankruptcy court lifted the automatic stay and Wells Fargo foreclosed. Plaintiffs, who indisputably were in default on the Note at the time of foreclosure, now seek to undue the foreclosure and obtain damages against the Wells Fargo Defendants. Plaintiffs' original and amended complaints allege the following five causes of action against the Wells Fargo Defendants: (1) declaratory judgment; (2) violations of the Fair Debt Collection Practices Act ("FDCPA"); (3) violations of the Utah Consumers Sale Practices Act ("UCSPA"), (4) breach of contract and breach of the covenant of good faith and fair dealing; and (5) violations of Real Estate Settlement Procedures Act ("RESPA"). For the reasons set forth below, each of these causes of action fail as a matter of law.

---

[1] Recognizing that they could not prevail under the allegations in their Complaint, Plaintiffs, without leave of Court or stipulation by the parties, filed a First Amended Complaint (together with the Complaint "Complaints"). The Court should not consider the allegations found in the First Amended Complaint because it is procedurally improper. See Fed. R. Civ. P. 15(a). Should the Court consider the allegations of the First Amended Complaint, it will determine that considering those allegations is futile because the allegations found in the First Amended Complaint do not allow Plaintiffs to defeat the Wells Fargo Defendants' Motion.

12968327

II.     **FACTS**

In its opening memorandum, the Wells Fargo Defendants identified several facts, all taken directly from Plaintiffs' Complaint that when applied to the governing law prevent Plaintiffs from prevailing on their claims as a matter of law.  Recognizing that the facts found in the Complaint are not sufficient to overcome the Wells Fargo Defendants' Motion to Dismiss, Plaintiffs filed their First Amended Complaint which focuses on the transfer of the Note from Premier, the original lender, to several other transferees, including Bank of America and its servicer, Wells Fargo.  Plaintiffs, because they cannot, do not allege that they are a party to these transfers.

Plaintiffs First Amended Complaint does not add any new facts or allegations that allow Plaintiffs to defeat the Wells Fargo Defendants' Motion.  Rather, Plaintiffs merely added numerous legal conclusions to the Complaint or other immaterial facts.  For instance, paragraph 13 of the First Amended Complaint now adds the language "this loan was a consumer transaction under both" the FDCPA and UCSPA.  Likewise, in paragraph 18, rather than adding additional facts that could help them defeat the Wells Fargo Defendants' Motion, Plaintiffs merely added legal conclusions about why the facts alleged in the Complaint are HAMP violations.  These legal conclusions are not factual allegations that allow Plaintiffs to overcome a motion to dismiss.

The relevant allegations in the First Amended Complaint are identical to the ones identified in the Wells Fargo Defendants' opening memorandum.  These facts are as follows: (1) the Toones signed the Note and Trust Deed in 1998 (Compl., ¶13 and FAC, ¶13.); (2) the Note and Trust Deed were transferred to LaSalle Bank and other subsequent transferees as the Note specifically allowed (See Compl., ¶30; FAC ¶30; and the Note attached as Exhibit A to the Wells Fargo Defendants' Opening Memo.); (3) Wells Fargo eventually became the servicer of the Note and Trust Deed and the Toones made payments to and interacted with Wells Fargo in that capacity (Compl. ¶¶15-17 and; FAC  ¶¶15-17); (4) the Toones were in default on the Note and

Wells Fargo commenced to foreclose on the home (Compl., ¶¶18, 25 and 41; and FAC ¶¶18, 25 and 50.); (5) the Toones attempted to forestall the foreclosure through a bankruptcy proceeding (Compl., ¶27; and FAC ¶27.); (6) the validity of Wells Fargo's ability to foreclose on the Trust Deed was reviewed and approved by the bankruptcy court when it opted to lift the automatic stay with respect to the foreclosure (Compl., ¶¶ 32-33, 44; FAC ¶¶ 32-34, 44.); and (7) Wells Fargo foreclosed on the home (Compl., ¶44; FAC ¶44.).

III.  **ARGUMENT**

   A.  Plaintiffs' First Amended Complaint is Procedurally Improper and Futile.

Under Rule 15 of the Federal Rules of Civil Procedure, Plaintiffs are not allowed to amend their pleadings at this point in the litigation because they did not obtain leave of Court or a stipulation from all the parties in the litigation allowing them to amend. See Fed. R. Civ. P. 15(a)(2). Thus, Plaintiffs First Amended Complaint should not be considered by the Court.

Should the Court, however, conclude that (a) it is inclined to either dismiss the Complaint without prejudice and allow Plaintiffs to file the First Amended Complaint; or (b) consider the allegations in the First Amended Complaint, the arguments herein will demonstrate that Plaintiffs have failed to allege sufficient factual matter in even the First Amended Complaint "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); quoting Bell Atlantic v. Twombley, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 1249; (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007)). As set forth below, the factual allegations and numerous legal conclusions found in the First Amended Complaint are not sufficient, as a matter of law, to entitle Plaintiffs to relief. As a result, allowing Plaintiffs to amend their complaint would be futile and the Court should enter an order dismissing Plaintiffs' claims against the Wells Fargo

12968327

4

Defendants with prejudice. See McGinnis v. GMAC Mortgage Corp., No. 2:10-cv-00301, 2010 U.S. Dist. LEXIS 90286, *18 (D. Utah Aug. 27, 2010).

    B.    Plaintiffs' Declaratory Judgment Claim Fails As a Matter of Law.

Plaintiffs' declaratory judgment claim fails as a matter of law for the following reasons:

    1.    *Each of the issues for which they seek a declaration from the Court happened in the past.*

Plaintiffs' cause of action for declaratory judgment is barred because the declarations they seek are for actions that took place months or years ago. This Court, in a similar matter, recently noted that declaratory judgment actions cannot be used to right past wrongs but rather "are designed to declare rights to avoid future litigation." Scarborough v. LaSalle Bank, 2011 U.S. Dist. LEXIS 43600, *8-*9 n.3 (D. Utah April 21, 2011) (quoting Volvo Constr. Equip. N. Am., Inc. v. CLM Equip Co., 386 F.3d 581, 593-94 (4th Cir. 2004)). This Court explained that "[c]auses of action seeking declaratory judgments are therefore 'untimely if the questionable conduct has already occurred or damages have already accrued.' Because the foreclosure and any wrong that Plaintiff suffered has already occurred, declaratory judgment at this stage is inappropriate." Id.; quoting Tapia at 718 F. Supp. 2d at 695-696. In this case, all of the declarations Plaintiff seeks related to alleged past wrong or damages, including the transfers of the Note, the alleged fraud involved in the bankruptcy case, and the unwinding of the foreclosure sale. (Compl. ¶ 50; FAC ¶ 50.) Because each of the issues for which Plaintiffs seek redress in their declaratory judgment cause of action took place months or years ago, their declaratory relief claim should be dismissed as a matter of law.

    2.    *Plaintiffs cannot challenge the transfer of the Note.*

Plaintiffs lack standing and are estopped from challenging the various lenders' transfers of the Note. As Plaintiffs state, "[t]he gravamen of this complaint is the allegation that the purported endorsements on the Toone Note are defective for many reasons, such that neither LaSalle nor BOA ever legally became the owner/endorsee of the Toone Note." Memo. in Opp.

at 2. Plaintiffs cannot challenge these transfers for the following two reasons:

<u>First</u>, Plaintiffs may not challenge the transfer of the Note from one note holder to another because they are not parties to the transfer and therefore lack standing. "Standing is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties." <u>Jones v. Barlow</u>, 2007 UT 20, ¶ 12, 154 P.3d 808. Generally, "only those who are a party to a contract have a legally protectable interest in that contract." <u>City of Grantsville, v. Redevelopment Agency of Tooele City</u>, 2010 UT 38, ¶14 (citations omitted). Indeed, it is generally accepted that "a litigant who is not a party to an assignment lacks standing to challenge assignment of a note." <u>Turner v. Lerner</u>, 2011 U.S. Dist. LEXIS 41364 (N.D. Ohio Apr. 11, 2011) (unpublished) (internal citations omitted); <u>see also</u> <u>Ifert v. Miller</u>, 138 B.R. 159 (Bankr. E.D. Pa. 1992) ("[Obligor] has no more right than a complete stranger to raise [Assignor's] rights under the assignment contract.").

Courts have specifically prohibited borrowers from challenging transfers of notes by noteholders. <u>See</u> <u>Breus v. McGriff</u>, 413 S.E. 2d 538, 539 (Ct. App. Ga. 1991); ("[Borrowers] are strangers to the assignment contract between [original note holder] and [transferee note holder] and thus have no standing to challenge its validity."); <u>Turner v. Lerner</u>, 2011 U.S. Dist. LEXIS 41364 (N.D. Ohio Apr. 11, 2011) ("[I]t is generally accepted law that a litigant who is not a party to an assignment lacks standing to challenge assignment of a note") (unpublished) (internal citations omitted); <u>Stein v. U.S. Bancorp</u>, 2011 U.S. Dist. LEXIS 18357 ( E.D. Mich. Feb. 24, 2011) (borrowers lacked standing to challenge assignment of their mortgage); <u>Chesney v. Pioneer Sugar Co.</u>, 73 Utah 293, 297 (Utah 1928) (noting "well-settled principle that the maker of a note cannot defeat an action thereon upon the grounds that the payee or some subsequent holder, who was a corporation, negotiated the same in an ultra vires transaction."). The Plaintiffs were not a party to the transfers of the Note and therefore may not challenge those transfers. Moreover, the Toones specifically granted Premier and subsequent note holders the right to transfer the Note. <u>See</u> Note, attached as Exhibit A, hereto ("I understand that the Lender may

transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'")

Second, Toones are estopped from objecting to the transfer of the Note because they made payments to subsequent note holders after Premier transferred the Note, including Wells Fargo. To prove estoppel, the Wells Fargo Defendants need only show that "(i) a statement, admission, act, or failure to act by one party [is] inconsistent with a claim later asserted; (ii) reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act, or failure to act; and (iii) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act." Ceco. Corp. v. Concrete Specialists, Inc., 772 P.2d 967, 969-70 (Utah 1989) (citations omitted). As the Breus court explained, "regardless of whether there had been a proper assignment of the [note] to [a subsequent note holder], such as would legally bind [Plaintiffs], . . . [Plaintiffs] will not now be heard to complain of the legality of this assignment and to question the right of [Wells Fargo] to proceed thereunder against [Plaintiffs]. [Having] dealt with [Wells Fargo] as having properly acquired this [note,] . . . [Plaintiffs are] therefore now estopped from raising the question." Breus, 413 S.E. 2d 539-40(ellipses in original); quoting Merchants Grocery Co. v. Shawnee Milling Co., 86 Ga. App. 848, 852, 72 S.E.2d 797 (1952). Plaintiffs made payments to Wells Fargo after Premier and subsequent transferees transferred the Note. Plaintiffs negotiated with Wells Fargo about a proposed loan modification. As a result, Wells Fargo reasonably assumed that the Toones understood that Wells Fargo properly held and serviced the Note. Finally, Wells Fargo would be damaged if Toones were allowed to challenge transfers that the Toones were aware of and accepted. Thus, Toones, like the borrower in Breus are estopped from claiming that the transfers were improper.

       3.    *Plaintiffs' Request for Declaration of Fraud on the Court Claim is barred by Issue Preclusion.*

Plaintiffs, under the guise of a "fraud on the court" theory attempt to have this Court review issues already decided by the bankruptcy court. Specifically, Plaintiffs claim that the Wells Fargo Defendants made false statements to the bankruptcy court in the process of obtaining a relief from the bankruptcy stay allowing the defendants to go forward with the foreclosure of the Property. Plaintiffs' claims, however, are barred for two separate reasons: (1) Plaintiffs cannot meet the elements for a fraud on the court claim; and (2) Plaintiffs' fraud on the Court claim is barred by collateral estoppel.

As set forth in its opening memorandum, to prevail on a fraud on the court claim the "[p]laintiff must have a good claim or defense which he has been prevented from presenting in the original suit. Plaintiff's plight must not be the result of his own negligence, and the facts constituting the fraud must be newly discovered after the decree." Anderson v. State, 238 P.2d 238, 523 (Utah 1925). Plaintiffs do nothing in their opposition or complaint to identify what claim or defense they were prevented from raising in the bankruptcy action because of the alleged fraud. Likewise, Plaintiffs have not identified what newly discovered evidence would have allowed them to defeat the defendants' motion to lift the stay.

The Court may likewise dismiss Plaintiffs' fraud on the court theory because it is barred by the doctrine of collateral estoppel. "Collateral estoppel, otherwise known as issue preclusion, 'prevents parties or their privies from relitigating facts and issues in the second suit that were fully litigated in the first suit." Jensen v. Cunningham, 2011 UT 17, ¶41 (citations omitted). Four elements must be met for a Court to apply issue preclusion:

> (i) the party against whom issue preclusion is asserted [was] a party to or in privity with a party to the prior adjudication; (ii) the

12968327

8

>issue decided in the prior adjudication [was] identical to the one presented in the instant action; (iii) the issue in the first action [was] completely, fully, and fairly litigated; and (iv) the first suit . . . resulted in a final judgment on the merits.

Id. (citations omitted). Each of these elements is met here. Plaintiffs were the debtors in the bankruptcy action. The veracity of the statements made to the bankruptcy court was completely, fully and fairly litigated. The ultimate orders lifting the stay and subsequently discharging the Toones from their debts were final orders for purposes of collateral estoppel. See First Niagra Leasing, Inc. v. Chesapeake Contractors, Inc. (In re Chesapeake Contractors, Inc.), 413 B.R. 254, 259–260 (D. Md. 2008) (Holding that a decision on a question of fact or law to decide a motion for relief from an automatic stay may be final and have preclusive effect.) Thus, these issues have been resolved and may not be relitigated here.

C.  Plaintiffs' FDCPA Claim Fails as a Matter of Law.

As the Wells Fargo Defendants demonstrated in its opening memorandum, they are exempt from the provisions of the FDCPA. Plaintiffs admit in their opposition memorandum that note holders are exempt from FDCPA. See Memo. in Opp. at 3-4. Likewise, loan servicers are also exempt from the provisions of the FDCPA. See Diessner v. Mortg. Elec. Registration Sys., Inc., 618 F.Supp.2d 1184, 1189 (D.Ariz. 2009) (holding that "mortgagees and their assignees, including mortgage servicing companies, are not debt collectors under the FDCPA when the debts were not in default when taken for servicing."). Plaintiffs fail to rebut the Wells Fargo Defendants' legal arguments set forth in its opening memorandum, and set forth no new or additional claims in their First Amended Complaint. Rather, Plaintiffs argue that the Wells Fargo Defendants "lost its exemption when the endorsements were not properly done and were illegal, invalid and void." (Opp. at 4.) Plaintiffs cite no legal basis for this position. Moreover, as explained above, Plaintiffs may not challenge the validity of the transfers of the Note. Thus, Plaintiffs' FDCPA claim fails as a matter of law against the Wells Fargo Defendants.

  D. <u>Plaintiffs' UCSPA Claim Fails as a Matter of Law.</u>

As set forth in the Wells Fargo Defendants' opening brief, Plaintiffs' UCSPA claim fails as matter of law because this case does not involve a "consumer transaction" and the Wells Fargo Defendants are not "suppliers" as defined by the UCSPA. Even if the Court rejects these arguments, the specific terms of UCSPA specifically state that UCSPA does not apply to conduct regulated by other state or federal law. <u>See</u> Utah Code Ann. §13-11-22(1)(a). As this Court has held, Utah has comprehensive regulations related to mortgages, foreclosures and trust deeds. <u>See</u> <u>Burnett v. Mortg. Elec. Registration Sys.</u>, 2009 U.S. Dist. LEXIS 100409, *12-14 (D. Utah Oct. 26, 2009).[2] As the <u>Burnett</u> Court explained, mortgage and trust deed related claims are "governed by the more specific Utah High Cost Home Loan Act, Utah Code section 61-2d-101 to -113, and Mortgage Lending and Servicing Act, Utah Code section 70D-2-101." <u>Id</u>. at *17. Plaintiffs fail to even address this argument in their opposition and, thus, this Court should dismiss this claim with prejudice.

  E. <u>Plaintiffs' Breach of Contract and Good Faith and Fair Dealing Claims fail as a Matter of Law.</u>

Plaintiffs' Fifth Cause of Action for "Breach of Contract - Duty of Good Faith and Fair Dealing" also fails as a matter of law. Recognizing that they could not succeed on this cause of action in their original complaint, Plaintiffs now assert that the Wells Fargo violated "the Hamps Temporary Modification and the covenant of good faith and fair dealing." (FAC, ¶ 18.) Specifically, Plaintiffs claim that they entered into a temporary modification of their Loan, and that Wells Fargo "wrongfully refused to finalize a loan modification under the HAMP program with the Toones." (FAC, ¶ 26.) Plaintiffs also erroneously claim that as a result of their temporary modification Wells Fargo falsely asserted that the Toones were in default.

This Cause of Action does not contain allegations concerning the underlying loan documents; rather, it addresses a temporary loan modification plan—signed by Plaintiffs and

---

[2] Some of Plaintiffs' allegations are also contemplated under RESPA, HAMP, and/or any other federal statutory regime, and thus they cannot be subject to relief under UCSPA.

12968327

dated effective December 1, 2009—which allowed for lower payments while Plaintiffs were being considered for a permanent modification (the "Trial Agreement"). A true and correct copy of the Trial Agreement is attached hereto as Exhibit B.[3] A review of the settled law concerning HAMP shows that Plaintiffs cannot prevail on this Cause of Action.

      Plaintiffs' claim that Wells Fargo wrongfully refused to finalize a loan modification fails because, as set forth in the Wells Fargo Defendants' Opening Memorandum, there is no such entitlement under HAMP and also because there is no private right of action under HAMP. (Mem. in Sup., p. 7.) Plaintiffs respond by arguing that Wells Fargo's actions in connection with HAMP constituted a breach of contract and breach of the covenant of good faith and fair dealing. (Opp. at 5.) Essentially, Plaintiffs are bringing HAMP claims "disguised" as contractual claims. This Court has already rejected similar attempts to characterize HAMP claims as breach of contract claims. In Shurtliff v. Wells Fargo Bank, N.A., a plaintiff brought a similar claim, arguing that since he had made payments under a similar (if not identical) trial loan period agreement, the refusal by Wells Fargo to permanently modify his loan was a breach of contract. No. 1:10-CV-165 TS, 2010 WL 4609307, * 3, (D. Utah Nov. 5, 2010) (unpublished). This Court dismissed the breach claim as "essentially a claim for a HAMP modification." Id. (quoting Marks v. Bank of Am., No. 03:10-cv-08039-PHX-JAT, 2010 U.S. Dist. LEXIS 61489, *16 (D. Ariz. June 22, 2010) ("Because Plaintiff is precluded from asserting a private cause of action under the HAMP, even disguised as a breach of contract claim, Defendant's Motion to Dismiss is warranted."); see also Vazquez v. Bank of Am. Home Loans, 2010 U.S. Dist. LEXIS 86654, *5 (D. Nev. Aug. 23, 2010) ("Nor can Plaintiffs attempt to use the claim for breach of contract to overcome the absence of a direct private right of action . . . .") (unpublished). Wells Fargo was not required to permanently modify Plaintiffs' loan, because HAMP does not require lenders to modify loans; it only requires lenders "to *consider* borrowers for loan modifications." Marks,

---

[3] "If a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." Oakwood Village LLC v. Albertsons, Inc., 2004 UT 101, ¶ 13, 104 P.3d 1226.

12968327

2010 U.S. Dist. LEXIS 61489 at * 8 n.3, 14-15 (emphasis added); Escobedo v. Countrywide Home Loans, 2009 U.S. Dist. LEXIS 117017, *7 (S.D. Cal. Dec. 15, 2009) (Recognizing that the HAMP agreements "do[] not state that [the lender] must modify all mortgages that meet the eligibility requirements.") (unpublished). Plaintiffs' claims related to the breach of the covenant of good faith and fair dealing should be dismissed because they are nothing more than disguised HAMP claims.

Should the Court conclude that Plaintiffs' breach claims are not "disguised" HAMP claims, the Trial Agreement expressly refutes Plaintiffs' claims that there has been a breach due to Wells Fargo's failure to permanently modify their Loan. (See Ex. B.) Under the Trial Agreement, Plaintiffs reached an understanding that modification would not be made permanent until, among other requirements, they had received "a fully executed copy of a Modification Agreement."[4] See Shurtliff, 2010 WL 4609307, at * 3 ("the Trial Agreement makes clear that the modification is subject to qualification and that the modification would not be made permanent until, among other things, Plaintiff received a fully executed copy of the Modification Agreement."). Plaintiffs further expressly agreed under the Trial Agreement that the original obligations and rights under the Loan Agreement would be retained: "all terms and provisions of the Loan Documents remain in full force and effect, nothing in this Plan shall be understood or

---

[4] The Trial Agreement states:

> If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required . . . ; or (iii) the Lender determines that my representations . . . are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan. . . .

Ex. B at §2F-G.
12968327

construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents." Trial Agreement, § 4.D.  Thus, the Trial Agreement cannot be the basis of a breach of contract or breach of the covenant of good faith and fair dealing claim.

Finally, Plaintiffs claim that Wells Fargo "falsely asserted that the Toones were in default" as a result of the modified payments made pursuant to the Trial Agreement. (FAC, ¶¶ 18, 25).  This claim is demonstrably false in light of the recorded Notice of Default.  A true and correct copy of the Notice of Default is attached hereto as Exhibit C.[5]  The Notice of Default, recorded well before Plaintiffs executed the Trial Agreement, clearly demonstrates that Plaintiffs were <u>already in default</u> for failure to meet their obligation to make monthly payments.  Thus, the Plaintiffs failure to perform at the time of or after the Trial Agreement was not the cause of their default.

   F. <u>Plaintiffs' RESPA Claim Fails as a Matter of Law.</u>

Plaintiffs' Sixth Cause of Action for violations of RESPA fails as a matter of law.  Plaintiffs' RESPA allegations remain deficient for the reasons set forth in the Wells Fargo Defendants' Opening Memorandum.  First, Plaintiffs have not plausibly alleged any damages resulting from Wells Fargo's alleged failure to respond to a QWR from Plaintiffs.  "Plaintiff has not alleged any actual damages resulting from the failure to respond or delay in responding to the QWR.  Therefore, this claim fails." <u>Thayne v. Taylor, Bean & Whitaker Mortgage Co.</u>, 2010 U.S. Dist. LEXIS 94721, *7 (D. Utah September 10, 2010) (unpublished); <u>see also</u> <u>Rodeback v. Utah Fin.</u>, 2010 U.S. Dist. LEXIS 69821 (D. Utah July 13, 2010) (unpublished) (damages must stem from delay in responding to the QWR).

In an attempt to remedy this deficiency, Plaintiffs have included additional allegations in their First Amended Complaint.  (See FAC, ¶ 76.)  These allegations, however, fail to make any plausible allegation as to how Plaintiffs were damaged by a failure to respond or delay in

---

[5] Public records are properly considered on Rule 12(b)(6) motions to dismiss because they are matters of which a judge may take judicial notice.  <u>See</u> James Wm. Moore et al, Moore's Federal Practice ¶ 12.34[2] (3d ed. 1997)).

12968327

13

responding to a QWR. Rather, all of Plaintiffs' allegations of damages rely upon claims as to whether Wells Fargo was wrongfully holding Plaintiffs in default, and that foreclosure thus proceeded wrongfully. Such alleged damages, however, have nothing to do with information Plaintiffs would have received in response to a valid QWR. In any event, these claims all fail because it is undisputed that Plaintiffs were in default well before entering into the Trial Agreement. See Notice of Default, Ex. B.[6]

Second, Plaintiffs' First Amended Complaint retains the same deficiencies as the original when it comes to Plaintiffs' failure to bring anything more than merely conclusory allegations of a "pattern or practice of noncompliance." (Mem. in Sup. at 13-14.) The Court "need not accept conclusory allegations without supporting factual averments" in granting a motion to dismiss. Estrada v. Aurora Loan Services, LLC, 2010 U.S. Dist. LEXIS 124865, *5, (D. Utah November 23, 2010) (quoting GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997)). RESPA allows for statutory damages when a plaintiff proves a "pattern or practice of noncompliance." See 12 U.S.C. § 2605(f)(1)(B). Plaintiffs have failed to plead any facts that might support such a statutory damages claim here.

Third, Plaintiffs' allegations concerning the subject of their purported "QWRs" remain deficient. As set forth in the Wells Fargo Defendants' Opening Memorandum, threats of legal action do not qualify for QWRs, which must pertain to the servicing or relating to the "receiving of any scheduled periodic payments from a borrower pursuant to the terms of any loan…and

---

[6] Plaintiffs also claim that they were damaged because RESPA requires Wells Fargo to cease collecting payments or otherwise enforcing the terms of the loan "unless or until the servicer has fully and properly complied with its RESPA obligations with respect to each QWR." (FAC, ¶¶ 43, 76). This claim is unsupported by any citation to statute. Further, courts have held that a QWR does not by itself prevent foreclosure action and was not intended to do so. See Gandrup v. GMAC Mortg., 2011 U.S. Dist. LEXIS 22334, 5-6 (N.D. Cal. Feb. 18, 2011) (stating that "Plaintiff is not entitled to a TRO merely by alleging he sent a QWR to Defendants.") (internal citations omitted) (unpublished); Eifling v. Nat'l City Mortg., 2011 U.S. Dist. LEXIS 30517 (W.D. Wash. Mar. 15, 2011) (unpublished) (Stating that QWR procedure "was not designed, and should not be used, as a vehicle to permit in default borrowers to flood their lender with documentation requests, on the hope that a failure to timely comply will lead to an affirmative cause of action, or a defense to a collection or foreclosure action."); Falcocchia v. Saxon Mortg., Inc., 709 F. Supp. 2d 873 (E.D. Cal. 2010) (failure to respond to a QWR cannot support a claim of wrongful foreclosure).

12968327

making the payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." King v. American Mortgage Network, Inc., 2010 U.S. Dist. LEXIS 92210, *6 (D. Utah September 2, 2010) (unpublished); Monet v. Countrywide Home Loans, 2011 U.S. Dist. LEXIS 37695 (N.D. Cal. Mar. 29, 2011) (unpublished) (dismissing RESPA claim where Plaintiff failed to "allege facts indicating that his correspondence satisfied any of the elements of a QWR"). Plaintiffs' only new allegations in the First Amended Complaint concerning the contents of the QWRs are that they put Wells Fargo "on notice that their actions were violating the terms of the loan – as 'modified' – and that they were estopped from declaring a default under the circumstances." (FAC, ¶ 19.) Again, Plaintiffs' allegations indicate that the QWRs consisted of threats of legal action, which are not the proper subject of a QWR.

IV. **CONCLUSION**

This Court should grant the Wells Fargo Defendants' Motion to Dismiss because Plaintiffs' claims against the Wells Fargo Defendants fail as a matter of law.

DATED this 10th day of May, 2011.

**Snell & Wilmer L.L.P.**

/s/ Stewart O. Peay
*Attorneys for Defendants Wells Fargo Bank, N.A., Norwest Mortgage, Inc., LaSalle Bank N.A., and Bank of America, N.A.*

CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of May, 2011 a true and accurate copy of the foregoing was served by CM/ECF electronic noticing to each of the following:

Brian W. Steffensen
Steffensen Law Office
448 East 400 South, Suite 100
Salt Lake City, Utah 84111

Richard Gunnerson
3269 South Main Street #100
Salt Lake City, UT 84115

/s/ Stewart O. Peay

12968327