IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRYAN TOONE and JOLYNNE TOONE<br><br>    Plaintiffs,<br><br><br><br>        vs.<br><br><br>WELLS FARGO BANK, N.A.; PREMIER<br>MORTGAGE CORPORATION OF<br>AMERICA; ACCUBANK MORTGAGE<br>CORPORATION DBA ACCUMORTGAGE<br>CORPORATION; NORWEST<br>MORTGAGE, INC.; LASALLE BANK<br>N.A., as Trustee; BANK OF AMERICA, NA;<br>ETITLE INSURANCE AGENCY;<br>LUNDBERG & ASSOCIATES; KENT W.<br>PLOTT; MARK S. MIDDLEMAS; DOES 1-<br>50<br><br>        Defendants. | MEMORANDUM DECISION AND<br>ORDER ON PENDING MOTIONS<br><br><br><br><br><br>Case No. 2:11-CV-170 |

This matter is before the Court on several motions.  Defendants Bank of America,

LaSalle Bank, Norwest Mortgage, and Wells Fargo Bank, NA (collectively "Wells Fargo") filed

a Motion to Dismiss on February 22, 2011.[1]  Defendants eTitle Insurance Agency, Lundberg &

_____

[1]Docket No. 5.

Associates, Mark S. Middlemas, Kent W. Plott and (collectively "eTitle") also filed a Motion to Dismiss on the same day.[2]  On April 15, 2011, Plaintiffs filed an amended complaint without prior leave from the Court or stipulation of Defendants and more than 21 days after the initial complaint was filed.[3]  On May 10, 2011 ,Wells Fargo filed a Motion to Strike Plaintiffs' Amended Complaint.  On June 1, 2011, Plaintiffs filed a Motion for Extension of Time to Oppose Defendant Wells Fargo's Motion to Strike the Amended Complaint.[4]  On June 6, 2011, Plaintiffs filed a Motion (1) for Leave to File Their First Amended Complaint and (2) to Strike Wells Fargo's Reply Memorandum.[5]

## I.  STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmoving party.[6]  Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face"[7] and the court "need not accept . . . conclusory allegations without supporting factual averments."[8]  "The court's function on a Rule

---

[2]Docket No. 8.

[3]Docket No. 21.

[4]Docket No. 29.

[5]Docket No. 30.

[6]*Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[7]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[8]*S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[9]  The Supreme Court has explained that a plaintiff must "nudge[ ][his] claims across the line from conceivable to plausible" to survive a motion to dismiss.[10]

> Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.[11]

The Supreme Court recently provided greater explanation of the standard set out in *Twombly* in *Ashcroft v. Iqbal*.[12]  In *Iqbal*, the Court reiterated that while FED.R.CIV.P. 8 does not require detailed factual allegations, it nonetheless requires "more than unadorned, the-defendant-unlawfully-harmed-me accusation[s]."[13]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[14]  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[15]

The Court in *Iqbal* stated:

---

[9]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[10]*Twombly*, 550 U.S. at 547.

[11]*The Ridge at Red Hawk, LLC  v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[12]129 S.Ct. 1937 (2009).

[13]*Id*. at 1949.

[14]*Id*. (quoting *Twombly*, 550 U.S. at 555).

[15]*Id*. (quoting *Twombly*, 550 U.S. at 557).

3

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[16]

In considering the adequacy of a plaintiff's allegations in a complaint subject to a motion to dismiss, a district court not only considers the complaint, but also "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[17] Thus, "notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, '[a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the

---

[16]*Id.* at 1949-50 (alteration in original) (internal quotation marks and citations omitted).

[17]*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 & Supp. 2007)).

documents' authenticity.'"[18]

## II. BACKGROUND

In 1998, Bryan and Jolynne Toone borrowed money from Premier Mortgage Corporation against their home, and executed a promissory note and trust deed.[19]  Wells Fargo was apparently the servicer of the loan from the beginning, though the note and trust deed were subsequently transferred several times.[20]  In 2010, Wells Fargo notified the Plaintiffs that they were in default.[21]  Defendant eTitle, the successor trustee, then served and recorded notices of default and trustee's sale, and Wells Fargo began foreclosure proceedings.[22]

Plaintiffs pursue six causes of action against Defendants. The Court will address each in turn.

## III. DISCUSSION

A.     DECLARATORY JUDGMENT

Plaintiffs' first cause of action seeks declaratory relief on several grounds. The Court notes

---

[18]*Alvarado v. KOBTV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[19]Docket No. 6, at 4.

[20]Docket No. 4, at 6-7.

[21]Docket No. 6, at 4.

[22]*Id.*

5

that this cause of action is filled with theories that the Court has repeatedly rejected.[23]  Plaintiffs

are apparently aware of this, having done away with paragraphs (a)-(g) of their first cause of

action in their First Amended Complaint.[24]

The remainder of Plaintiffs' first claim seeks a declaration that each of the Defendants

have committed various improper acts.  This Court has recently noted that declaratory judgments

are "'designed to declare rights so that parties can conform their conduct to avoid future

litigation'"[25] not to fix "'alleged past wrongs.'"[26]  Each paragraph of Plaintiffs' first cause of

action requests a declaration that one of the named Defendant's past actions was improper.[27]

"Accordingly, the causes of action for declaratory judgment can be dismissed independently for

failure to state a claim."[28]

However, even if declaratory judgment were a proper vehicle for any of Plaintiffs' claims,

the claims would still fail to meet the pleading standard.  Plaintiffs explain that the "gravamen of

[their] complaint is the allegation that the purported endorsements on the Toone Note are

--------

[23]Plaintiffs original Complaint pursued both a "split note" and a "show me the note" theory.  For a rejection of the "split note" theory see *Rodeback v. Utah Financial*, 2010 WL 2757243 (D. Utah 2010).  For a rejection of the "show me the note" theory see *Marty v. Mortgage Electronic Registration System*, 2010 WL 4117196 (D. Utah 2010).

[24]Docket No. 22, at 3.

[25]*Scarborough v. LaSalle Bank*, 2011 WL 1549432, *3 (D. Utah Apr. 21, 2011) (quoting *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 593-94 (4th Cir. 2004)).

[26]*Id.* (quoting *Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. 2010)).

[27]*E.g.,* Docket No. 4, ¶ 50(h) ("a declaration that neither LaSalle nor BOA had any right to appoint eTitle as 'successor trustee' under the Toones' Trust Deed. ").

[28]*Scarborough*, 2011 WL 1549432, at *3.

defective for many reasons, such that neither LaSalle nor BOA ever legally became the

owner/endorsee of the Toone Note."[29]  Rather than coupling allegations of fact with valid legal

principles to support this proposition, Plaintiffs have instead proffered the rather unhelpful

argument that because the initial transfer from Premiere to an assignee is signed by the assignee

rather than Premiere, the endorsement "can not possibly be a proper and effective endorsement."[30]

The remaining transfers Plaintiffs describe as "robo-signed," which purportedly renders them

void.[31]  Though Plaintiffs allege that the supposed invalidity of "robo-signing" has been

"documented extensively in cases throughout the country," they fail to provide any supporting

citations.[32]  These unsupported contentions of invalid endorsement are the linchpin of all of

Plaintiffs' requests for relief under their first cause of action.  Accordingly, the Court will dismiss

Plaintiffs' first cause of action.

B.      THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

        The FDCPA is a federal statute that applies to the practice of parties who are "debt

collectors."

        The term "debt collector" means any person who uses any instrumentality of interstate
        commerce or the mails in any business the principal purpose of which is the collection of
        any debts, or who regularly collects or attempts to collect, directly or indirectly, debts
        owed or due or asserted to be owed or due another.[33]

---

[29]Docket No. 22, at 2.

[30]Docket No. 4, at 6.

[31]*Id.* at 7.

[32]*Id.* at 5.

[33]15 U.S.C. § 1691a (6).

Plaintiff apparently alleges that all Defendants are debt collectors and that each violated the FDCPA in pursuing the foreclosure in this matter.  This claim fails because none of the Defendants qualify as debt collectors.

The question of whether mortgagees and their assigns are debt collectors for purposes of the FDCPA has been addressed by this Court.  In *Kee v. R-G Crown Bank*, the Court held that a mortgage servicer was not a debt collector where the servicer had acquired the note before it was in default.[34]  Nothing in the record indicates, and Plaintiffs do not allege, that Wells Fargo began servicing the loan after it was in default.  Accordingly, Wells Fargo cannot be a "debt collector." Furthermore, "the holder of the Note . . . is not a 'debt collector' within the meaning of [the FDCPA] because [the Note holder] is not attempting to collect the debt of **another**."[35]  Thus, because Premier and all subsequent assignees were merely note holders, they cannot be classified as "debt collectors."

As to eTitle, the successor trustee, and Lundberg & Associates, Kent W. Plott, and Mark S. Middlemas, legal counsel that assisted with the foreclosure, this Court has held that "[a] trustee engaged in a non-judicial foreclosure is not acting 'in connection' with the 'collection of [a] debt,'" and therefore is not subject to the FDCPA.[36]  This principle extends to attorneys aiding in the foreclosure process as well.[37]  However, the Court has recognized that one of the FDCPA's

---

[34]656 F. Supp. 2d 1348 (D. Utah 2009).

[35]*Id.* at 1354-55.

[36]*Id.*

[37]*Maynard v. Cannon*, 650 F. Supp. 2d 1138, 1142 (D. Utah 2008).

8

provisions could be read to impose some restrictions on attorneys acting to enforce a security

agreement.[38]  That provision prohibits

> Taking or threatening to take any nonjudicial action to effect dispossession or
> disablement of property if–
> (a) there is no present right to possession of the property claimed as collateral
> through an enforceable security interest;
> (b) there is no present intention to take possession of the property; or
> (c) the property is exempt by law from such dispossession or disablement.[39]

Plaintiffs have alleged no facts indicating that these Defendants have violated this provision,

instead relying on their ill-fated invalid endorsement theory (which would, theoretically, destroy

the right of any party to take possession of the property).  Without these essential facts, Plaintiffs

have failed to do anything more than state the bare legal conclusion that these Defendants have

violated the FDCPA.

In light of the foregoing,  the Court will dismiss Plaintiffs' FDCPA claims against all

Defendants.

C.      UTAH CONSUMER SALES PRACTICES ACT (UCSPA)

Under the UCSPA, a "supplier" may not commit a "deceptive act or practice . . . in

connection with a consumer transaction."[40]  Plaintiffs allege that "each of the defendants is a

'supplier,'" that the note was a consumer transaction, and that "false representations by and other

actions of the defendants . . . constituted deceptive acts or practices, and/or unconscionable

---

[38]*Id.*

[39]15 U.S.C. § 1692f (6).

[40]U.C.A. § 13-11-4.

conduct."[41]  Plaintiffs decline to explain which of Defendants' actions were misrepresentations, and how those misrepresentations relate to any of the 23 different "deceptive acts" identified in the statute.  The Court can only assume that Plaintiffs are resorting to their invalid endorsement claims.  Because the Toones' invalid endorsement theory is unsupported, all theories that rest upon it are likewise deficient.  Accordingly, the Court will dismiss Plaintiffs' third cause of action.

D.   ETITLE'S DUTY OF GOOD FAITH

Plaintiffs claim that eTitle had a duty to "not accept the appointment as successor trustee and not to proceed to foreclose upon The Toones [sic] Property under the circumstances herein."[42] This is because, "[g]iven the National Foreclosure Crisis–it is common knowledge that the underlying documentation is almost always incorrect and/or fraudulent in some form or fashion as alleged herein."[43]  Plaintiffs have failed to direct the Court to any authority for the proposition that a trustee is under such an obligation, other than the principle that "a trustee owes a duty to act with reasonable diligence and good faith on the trustor's behalf."[44]

The Court has rejected claims that a non-judicial foreclosure trustee's duty of reasonable diligence and good faith requires trustees to halt their work and investigate a trustor's claims of a

---

[41]Docket No. 4, at 9.

[42]Docket No. 4, at 15.

[43]*Id.*

[44]Docket No. 13, at 10 (citing *Russell v. Lundberg,* 120 P.3d 541, 545 (Utah Ct. App. 2005)).

lack of authority to foreclose.  In *Burnett v. Mortgage Electronic Registration System*,[45] the Court

held that a successor trustee had no duty to stop foreclosing and investigate the plaintiff's claims

that the entity that appointed the trustee had no authority to do so.[46]  Here, much like in *Burnett*,

Plaintiffs essentially contend that eTitle should make sure it has standing to foreclose by ensuring

the trust deed was validly signed over to it before foreclosing.[47]  Accordingly, Plaintiffs are

incorrect in their assertion that eTitle's actions violated any duty eTitle owed to Plaintiffs as

trustee.  Thus, the Court will dismiss Plaintiffs' fourth cause of action.

E.      GOOD FAITH AND FAIR DEALING

        Plaintiffs claim that Wells Fargo has breached its duty of good faith and fair dealing by

refusing to modify their loan under HAMP.[48]  The Court has repeatedly held that HAMP does not

authorize a private right of action and that "HAMP-based claims, disguised as other claims, such

as breach of contract, are not cognizable."[49]  Accordingly, the Court will dismiss Plaintiffs' fifth

cause of action.

---

[45]2009 WL 3582294 (D. Utah 2009).

[46]*Id.* at *5. Likewise, in *Kee v. R-G Crown Bank*, this Court held that attorneys intiating foreclosure proceedings had no duty to "postpone the foreclosure and sale of Plaintiff's property and investigate Plaintiff's claim that the Note and Trust Deed were invalid and unenforceable." 656 F. Supp. 2d 1348, 1356 (D. Utah 2009).

[47]*Kee*, 656 F. Supp. 2d at 1356.

[48]Docket No. 22, at 6-7.

[49]*Terry v. IndyMac Mortg. Servs.*, 2011 WL 2112033, at *1 (D. Utah May 26, 2011) (citing *Shurtliff v. Wells Fargo Bank, NA*, 2010 WL 4609397, at *3 (D. Utah Nov. 5, 2010); *Marks v. Bank of Am., NA*, 2010 WL 2572988, at *5-6 (D. Ariz. June 22, 2010)).

F.      RESPA

Plaintiffs allege that they submitted multiple Qualified Written Requests for information to

Wells Fargo under the Real Estate Settlement and Procedures Act (RESPA),[50] to which Wells

Fargo failed to respond.[51]  According to Plaintiffs, this failure entitles Plaintiffs to compensation

for actual damages, which they define as "distress, anxiety, damage to credit and the like."[52]

Plaintiffs also ask for declaratory relief requested in their first cause of action as well as an order

cancelling the note and trust deed.

This Court considered and rejected nearly identical claims in *Rodeback v. Utah*

*Financial*.[53]  Under RESPA, any damages the Court awards must be caused by a defendant's delay

in response to a QWR.[54]  As in *Rodeback*, none of Plaintiffs' proposed damages are "the result of

Defendants' delay in responding to the QWR.  Rather they flow from Defendants' actions

occurring after Defendants' tardy response."[55]  Thus, even if Plaintiffs' requests for information

were proper QWRs, Plaintiffs have alleged no actual damages which can be compensated under

RESPA.

Plaintiffs also allege they are entitled to additional damages under RESPA because Wells

---

[50]12 U.S.C. § 2605(e).

[51]Docket No. 4, ¶ 42.

[52]*Id.* ¶ 77.

[53]2010 WL 2757243.

[54]*Id.* at *3.

[55]*Id.*

Fargo has engaged in a "pattern and practice" of noncompliance with RESPA.  As Defendants note, "Plaintiffs have failed to plead any facts that might support such a statutory damages claim here."[56]  The Toones have merely alleged that Wells Fargo's supposed violations of RESPA in regards to the Toones, coupled with "the manner in which they have failed to properly respond to QWRs from other borrowers, demonstrate that they are knowing and wilful and that Wells Fargo has a pattern and practice of knowingly and wilfully violating RESPA."[57]  Such conclusory allegations fail state a claim for which relief can be granted.  Accordingly, the Court will dismiss Plaintiffs' sixth cause of action.

G.     PLAINTIFFS' MOTION TO FILE A SECOND AMENDED COMPLAINT

A party may amend its pleading as a matter of course within 21 days of serving it.[58]  All other amendments may only be filed with the opposing party's consent or the Court's leave.[59]  Plaintiffs submitted their First Amended Complaint more than 21 days after serving their original Complaint and without the Court's or Defendants' permission, thus violating this rule.  Now Plaintiffs have asked the Court for leave to submit their First Amended Complaint.[60]

As a general matter, the Court should "freely give leave [to amend] when justice so

---

[56]Docket No. 25, at 14.

[57]Docket No. 4, ¶ 42.

[58]Fed. R. Civ. Pro. 15(a)(1).

[59]*Id.* (15)(2).

[60]Docket No. 30.

requires."[61]  Courts may depart from this general rule, however, when amendment would be futile.[62]  A proposed amendment is futile if the complaint, as amended, would nonetheless be subject to dismissal.[63]  After reviewing Plaintiffs' First Amended Complaint, much of which either restates or copies verbatim the original Complaint, the Court finds that nothing therein cures the deficiencies of the original Complaint.  Plaintiffs continue to base nearly all of their allegations on the unsupported premise that the note was improperly endorsed.  All Plaintiffs' claims that do not rely on this theory misapply statutory or case law in the same manner as detailed above.  Accordingly, the Court will deny Plaintiffs' Motion to File Their First Amended Complaint.[64]

## IV. CONCLUSION

In light of the foregoing, all motions pertaining to Plaintiffs' Motion to File Their First Amended Complaint are moot.  It is therefore

ORDERED that Defendant Wells Fargo and Defendant eTitle's Motions to Dismiss (Docket Nos. 5 and 8) are GRANTED. It is further

ORDERED that Defendant Wells Fargo's Motion to Strike Amended Complaint (Docket No. 26), Plaintiffs' Motion for Leave to File Their Amended Complaint (Docket No. 30)  and Plaintiffs' Motion for Extension of Time to Oppose Defendant Wells Fargo's Motion to Strike the

---

[61]Fed. R. Civ. Pro. 15(a)(2).

[62]*Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).

[63]*Id.*

[64]Docket No. 30.

Amended Complaint (Docket No. 29) are DENIED AS MOOT.

DATED   September 27, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge