**Brian W. Steffensen (3092)**
**STEFFENSEN ❖ LAW ❖ OFFICE**
448 East 400 South, Suite 100
Salt Lake City, Utah 84111
Telephone (801) 485-3707
Facsimile (801) 485-7140
Attorneys for Plaintiffs

**IN THE UNITED STATES  DISTRICT COURT**
**IN AND FOR THE STATE OF UTAH**

| | |
|---|---|
| Bryan Toone and JoLynne Toone<br><br>v.<br><br>Wells Fargo Bank. NA;<br>Premier Mortgage Corp. Of America;<br>Accubank Mortgage Corporation dba<br>Accumortgage Corporation;<br>Norwest Mortgage, Inc.;<br>LaSalle Bank N.A., as Trustee;<br>Bank of America, NA;<br>eTitle Insurance Agency;<br>Lundberg & Associates;<br>Kent W. Plott;<br>Mark S. Middlemas;<br>Richard Gunnerson;<br>Brad G. DeHaan;<br>Brigham Lundberg;<br>Does 1-50 | **FIRST AMENDED COMPLAINT**<br><br><br><br>Civil No. 2:11-cv-00170<br><br>Judge Ted Stewart |

For their  claims for relief against the defendants, Plaintiffs Bryan Toone and

JoLynne Toone allege as follows:

1.      Brian Toone and JoLynne Toone are individuals residing in Salt Lake County, Utah (the

         "Toones" or "Plaintiffs")

2.      Wells Fargo Bank. NA is a national banking association doing business in the State of
        Utah ("Wells Fargo").

3.      Premier Mortgage Corp. of America is a corporation which in 1998 was doing business in
        the State of Utah originating mortgage loans ("Premier").

4.      Accubank Mortgage Corporation dba   Accumortgage Corporation is a mortgage
        corporation which purports to purchase loans from originators such as Premier
        ("Accubank").

5.      Norwest Mortgage, Inc.'s current status is unknown to plaintiffs, but it purports at
        relevant times to have acquired a loan owed by the Toones ("Norwest").

6.      LaSalle Bank N.A's current status is unknown to plaintiffs, but it purports at relevant
        times to have been the trustee for the holders of Prime Mortgage Trust, Mortgage
        Pass-Through Certificates, Series 2004-CL1 ("LaSalle Bank").

7.      Bank of America, NA purports to be the successor in interest to LaSalle Bank as trustee
        for the holders of Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series
        2004-CL1 ("BOA").

8.      eTitle Insurance Agency is a Utah entity which engages in the collection of consumer
        debts and the foreclosure of trust deeds ("eTitle").

9.      Lundberg & Associates is a Utah law firm which engages in the collection of consumer
        debts and the foreclosure of trust deeds and the like ("Lundeberg Associates").

10.    Kent W. Plott ("Plott") is a Utah attorney who engages in the collection of consumer

debts ("Plott").  Mark S. Middlemas is a Utah attorney who engages in the collection of

consumer debts ("Middlemas").

11.    Richard Gunnerson ("Gunnerson"), Brad G. DeHaan ("DeHann"), and Brigham Lundberg

("Bryan Lundberg") are also Utah attorneys who engage in the collection of consumer

debts.

12.    Does 1-50 are individuals or entities who are liable to plaintiffs on one or more of the

claims for relief herein but whose entities are not presently known.

13.    In 1998, the Toones borrowed money from Premier and secured it with a first trust deed

against their residence located at 179 West Paxton Avenue, Salt Lake City, UT and more

particularly described as:

> "All of Lot 26, and the West 8-1/3 feet of Lot 25, Block 3, WEST
> BOULEVARD SUBDIVISION, according to the official plat
> thereof, recorded in the office of the County Recorder of Salt Lake
> County, Utah." (The "Toone Residence").

This loan was a consumer transaction under both the Fair Debt Collection Practices Act,

15 USC 1692 et seq. (FDCPA), and the Utah Consumer Sales Practices Act, UCA

13-11-1 et seq. (UCSPA).

14.    From recent filings by Lundeberg Associates in the Toones' bankruptcy, the defendants

purport to have transferred  the Toone Note and Trust Deed several times and claim that it

presently is part of the Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series

2004-CL1.  The Toones deny that these claims are true as alleged hereafter.

15.   The Toone Note has been serviced by Wells Fargo.

16.   In the Spring of 2010, the Toones applied for and began a temporary loan modification under HAMPS.

17.   The Toones made all of the payments in a lower amount as agreed as per the Hamps temporary modification.

18.   Wells Fargo, however, failed to credit the Toones with these payments and began sending notices that the Toones were in default.  This violated the terms of the parties' agreement as modified via the Hamps Temporary Modification and the covenant of good faith and fair dealing.  Given the representations, warranties and promises made to the Toones which induced them to enter into the Hamps Temporary Modification (i.e., that it would be acceptable to the Lender for the Toones to make the lower payments and have the foregone payment amounts added to the end of the loan, and the like, and that the Toones would remain in good standing under their loan) and pursuant to which the Toones began to make the lower "modified" payments as agreed, Wells Fargo, LaSalle and/or BOA were estopped from claiming a default under the Note and Trust Deed and from later pursuing a lift stay motion and proceeding to foreclose.

19.   The Toones wrote and telephoned Wells Fargo numerous numerous times complaining of these inaccuracies and problems and asking that their accounting be cleaned up.  All such

written requests were Qualified Written Requests under RESPA and also requests for

validation under the FDCPA.  They also put Wells Fargo, LaSalle and BOA on notice

that their actions were violating the terms of the loan – as "modified" – and that they were

estopped from declaring a default under the circumstances.

20.     Wells Fargo, LaSalle and/or BOA did not properly respond to these QWRs as required by

RESPA, did not stop declaring a default even though the Toones were making their

modified payments as had been expressly agreed, and failed to correct the accounting

which Wells Fargo claimed showed that payments were not properly being made and that

the loan was in default.  These actions not only violated RESPA, but also were breaches

of the parties' agreements, and violations of the covenant of good faith and fair dealing.

This caused the Toones immense fear and emotional distress and ultimately drove them

into bankrupty and a total loss of the semblance of good credit that they otherwise would

have had.

21.     eTitle Insurance Agency is a Utah entity which contracts with servicers to collect

delinquent trust deed notes  and to foreclose upon trust deeds ("eTitle").

22.     Bank of America, NA is a national banking association which Wells Fargo and eTitle

claim is the current beneficiary under the Toones' Trust Deed, as Trustee for the holders

of Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2004-CL1 .  Upon

information and belief, Bank of America is not in fact the current beneficiary as alleged

hereafter.  One of the key facts which needs to be investigated in this case and determined by the trier of fact is the identity of the true beneficiary of the Toone Trust Deed as of the date of the execution of the Substitution of Trustee which purported to substitute eTitle as Trustee under the Toone Trust Deed.

23.      Without any real involvement by BOA or of the true  "beneficiary" under the Toones' Note and Trust Deed, Wells Fargo caused a "Substitution of Trustee" to be signed by an individual purporting to act for BOA, but which individual upon information and belief had no authority to so act and whose act was a nullity because, among other things, BOA was not in fact the then current beneficiary and/or owner of the Toones' Trust Deed, and even if it were, upon information and belief, the signature which purports to be for and on behalf of BOA was made by a "robosigner" or "robo-perjurer" as has been documented extensively in cases throughout the country, and was a legal nullity.

24.      Etitle and attorney Scott Lundberg are members of the LPS network and contract with LPS related entities to provide such falsified paperwork in connection with foreclosures that they undertake.  Etitle and Lundeberg are aware and know (a) that the true owners of the notes/ trust deeds are New York trusts and not Bank of America and the like, and/or (b) that the notes/ trust deeds were never properly transferred to the New York trusts such that Bank of America (nor LaSalle Bank before it) obtained any rights therein and/or thereto, and /or  ( c) that said signatures are manufactured and are false, yet eTitle and

Lundeberg purport to act as "trustee" under these false and fraudulent substitutions of trustee in hundreds and hundreds of foreclosure cases.

25.     In any event, even though the Toones were not in fact in default on the Toones' Note and Trust Deed, Wells Fargo, BOA and eTitle falsely asserted that the Toones were in default and purported to commence foreclosure proceedings against the Toones' Residence.  This caused the Toones to suffer extreme fear and emotional distress, as well as damaging their credit.

26.     Wells Fargo wrongfully refused to finalize a loan modification under the HAMP program with the Toones, even though the Toones by all indications qualified for a permanent modification.  This violated the promises, warranties and representations that were made to the Toones at the commencement of the modification process with respect to (a) the standards for qualifying for a modification, (b) the fact that if the Toones made their payments under the temporary, trial modification, the modification would be made permanent, and ( c) the other terms and conditions contained in the Wells Fargo modfiication program descriptions (both written and on the web).  The Toones suffered damage to their credit, were forced to take out bankruptcy, and are facing the loss of their home and the like.

27.     Because of the illegitimate and wrongful threatened loan foreclosure proceedings, the Toones filed for Chapter 7 bankruptcy.

28.    In said Bankruptcy, Lundeberg Associates, Plotkin and Middlemas, for and on behalf of LaSalle, BOA and Wells Fargo, filed a Motion for Relief of Stay which represented:

    a.    That they were proceeding for and on behalf of LaSalle Bank, trustee;

    b.    That BOA was the successor in interest to LaSalle Bank, trustee, through a merger;

    c.    That LaSalle "acquired the beneficial interest in the Toones' Trust Deed and Note by an endorsement on the Note;

    d.    That the Toones' Trust Deed created a valid security interest in favor of LaSalle Bank, trustee;

    e.    That the Toones were delinquent in their payments;

    f.    That the Toones had not made the monthly payments from February 2010 through September 2010; and the like.

29.    The foregoing statements were false when made, and knowingly false or made with reckless disregard for the truth.

30.    Examining the Toones' Note attached as Exhibit B to the Motion for Relief from Stay, one notes the following:

    a.    The Note was purportedly initially endorsed from Premier to Accubanc, but the endorsement is undated and is signed by Accubanc, not Premier, and by "Leslie Pitkin, Underwriting Assistant."  This was not the legally effective act of Premier.

The attempted endorsement was invalid and void.  It appears, therefore, that the Toone Note still is owned by Premier.

b.      There next appears an endorsement from Accubanc to Norwest Mortgage.  It is not dated.  Upon information and belief, the signature of "Jan B. Hamrick" was a "robo-signed" or "robo perjured" signature.  Consequently, this purported endorsement was legally ineffective and is void.

c.      There next appears an endorsement from Norwest to LaSalle Bank National Association, as Trustee, by "Keith T. Rogers, vice president" for "Norwest Mortgage, Inc."  Again, it is not dated.  Since the securitized trust was created and closed in 2004, if this endorsement occurred after the securitization closed, it is a nullity.  The trust by operation of New York Trust Law could not and can not receive title to property after the close of the offering.  Upon information and belief, it was signed too late and the attempted transfer to LaSalle Bank National Association, as Trustee for the holders of Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2004-CL1 was illegal and/or otherwise void.  Even if it was actually signed timely, upon information and belief, this signature was "robo-signed" or "robo- perjured," and is null and void.   This fraudulent and falsified endorsement did not transfer any interest in the Toone Note to LaSalle.  For any one of these reasons, this purported "endorsement" is invalid and of no

force or effect.  LaSalle Bank National Association, as Trustee, did not become the beneficial owner of the Note due to these defects in the transfers of title. Consequently, BOA never became the beneficial owner/ endorsee of the Toone Note.

d.     Then there is an Allonge attached in which "Greg Ceneviva, Vice President, Wells Fargo Home Mortgage, Inc." signed for "Wells Fargo Home Mortgage, Inc. Attorney in Fact fo Wachovia Bank fka First Union National Bank as Trustee" to LaSalle National Association, as Trustee.   Again there is no date.  Upon information and belief, it was signed after the 2004 securitization closed and is therefore invalid and void.  Next, either this endorsement of the previous one is invalid – because they both purport to effect the same transfer.  The existence of inconsistent endorsements on the Note is evidence of bungling document/ endorsement fabrication by LPS employees acting for and on behalf of Wells Fargo, LaSalle and BOA. Upon information and belief, this  allonge was manufactured by LPS for Wells Fargo, LaSalle and BOA and has false and fraudulent "robo-signed" and/or "robo-perjured" signatures.  This endorsement is an example of fraud.  No interest in the Toone Note was transferred via this falsified endorsement.  Consequently, BOA never became the beneficial owner/ endorsee of the Toone Note.

31.     For any one of these reasons, neither LaSalle nor BOA was the beneficiary under the Toone Trust deed at the time that "Substitution of Trustee" pursuant to which eTitle purported to act in connection with the threatened foreclosure against the Toones was executed and recorded,  Said Substitution of Trustee was and is void and a legal nullity.

32.     The Motion for Relief of Stay was a fraud upon the bankruptcy court and done without any  standing. The Order lifting the stay was obtained by fraud.

33.     eTitle  noticed up a Trustee's Sale for Monday, January 3, 2010 at 12:30 p.m.

34.     eTitle had no authority to do so, and the same was a legal nullity.

35.     The Toones  sent numerous additional Qualified Written Requests (QWRs) under RESPA to Wells Fargo complaining about the incorrect accounting, demanding identification of the true owner of their Note and Trust Deed, and the like and a retraction of the foreclosure proceedings.

36.     eTitle has never given the Toones an accurate and proper reinstatement figure to cure their loan. The Toones have been denied their right to reinstate under Utah law as a result.

37.     Because LaSalle and BOA have never properly acquired any right or title in and/or to the Toones' Note and/or Trust Deed, they have never been protected from liability under the FDCPA as debt collectors.

38.     Upon information and belief, neither LaSalle Bank nor BOA has ever in fact properly acquired the Toones' Note and Trust Deed and had no power to act pursuant to said

11

documents.

39.     Upon information and belief, the person and/or entity which purported to execute the

        substitution of trustee under the Toones' Trust Deed did not have legal authority to do so.

40.     Consequently, the substitution of trustee which appointed eTitle as substitute trustee was

        and is null and void.  As a result, no actions taken by eTitle have any force or effect.

41.     Etitle recorded and served the Toones with one or more Notice(s) of Default and a Notice

        of Trustee's sale.  All such are legal nullities.

42.     Wells Fargo  failed to properly respond to any of the Toones' QWRs as required by

        RESPA, either with respect to timeliness or substantively.  The nature and extent of these

        violations, plus the manner in which they have failed to properly respond to QWRs from

        other borrowers, demonstrate that Wells Fargo's RESPA violations are knowing and

        wilful and that Wells Fargo has a pattern and practice of knowingly and wilfully violating

        RESPA with respect to QWRs.

43.     Under RESPA, if a servicer of a loan – which Wells Fargo is  – has received a QWR from

        a borrower, the servicer can not proceed to collect payments on or otherwise seek to

        enforce the terms of the loan unless or until the servicer has fully and properly complied

        with its RESPA obligations with respect to each QWR.

44.     Despite having failed to properly address these QWRs, Wells Fargo has allowed eTitle

        and Lundberg Associates to proceed with foreclosure activities and have continued to

make negative credit reporting about the Toones to various Credit Reporting Agencies.
eTitle purported to foreclose on the Toones' residence on January 3, 2011. Lundberg,
Gunnerson, DeHann and Brigham Lundberg served the Toones with 5-day Notices to
Vacate on or about January 19, 2011, even though they knew from the institution of this
action, that it was almost certain that the purported foreclosure was void.  Lundberg,
Gunnerson, DeHann and Brigham Lundberg then filed an unlawful detainer/ eviction
lawsuit against the Toones.  All of the allegations in said lawsuit are knowingly incorrect
and fraudulent given the foregoing facts and are violations of the FDCPA and the
UCSPA.  Lundberg Associates, Plotkin and Middlemas are attorneys who regularly
engage in the collection of consumer debts and are debt collectors and/or suppliers under
the FDCPA and the UCSPA. .

44.     The FDCPA requires debt collectors to give certain notices within five days of first
communication with a "debtor."

45.     None of the defendants provided the Toones with any of the required notices within five
days of "first" communication or contact.

46.     No debt collector can make any affirmative mis representation as to the character, nature
and/or amount of a purported debt.

47.     No debt collector may engage in abusive or bad faith debt collection practices.

48.     It is an abusive and bad faith debt collection practice to (a) record a notice of default

without the purported Substitute Trustee having been properly appointed, (b) inaccurately describe the amount of the deficiency (the Toones were never given proper credit in the accountings for their trial modification payments), ( c) fail to give correct reinstatement figures, (d) to on the one hand approve a trial loan modification with all of the representations, warranties and promises described above, and then at the same time breach those promises and warranties by falsely declaring a default and asserting that the Toones were not making payments  as agreed under the loan, (e) to make false representations in a motion to modify stay in the Toones' bankruptcy as alleged above, (g) to bring such a motion supported by a copy of the Toone Note which has fabricated and false endorsements created by the LPS fraudulent document creation process, (h) to obtain a lift stay order based upon fraud, (I) to purport to proceed to foreclose for and on behalf of LaSalle and/or BOA when LaSalle and/or BOA is not in fact the current beneficiary and/or endorsee of the Toone Note, (j) to then purport to conduct a trustee's sale, (k) to then serve eviction notices when they know the sale is invalid, (l) to file an eviction lawsuit and claim that the Toones must vacate the premises and that they owe unlawful detainer damages, and the like.

## **FIRST CAUSE OF ACTION**
### Declaratory Judgment

49.   The Toones incorporate herein all of the allegations of this complaint.

50.   Section 78B-6-401, Utah Code Ann. authorizes courts in Utah to issue declaratory

judgments, determining rights, status, and other legal relations and specifically states, "An action or proceeding may not be open to objection on the ground that a declaratory judgment or decree is prayed for" and authorizes declaratory judgments affirmative or negative in form and effect which shall have the force and effect of a final judgment or decree.

51.    Fed.R.Civ.Proc. 57 authorizes declaratory judgments and provides that the existence of another adequate remedy does not preclude a declaratory judgment and authorizes courts to order a speedy hearing of a declaratory-judgment actions.

52.    Title 28 U.S.C., Chapter 151, § 2201, provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  § 2202 provides that, "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

53.    The Toones are therefore entitled to the following declaratory relief:

    a.    a declaration that the purported Premier to Accubanc endorsement was invalid;

    b.    a declaration that the purported Accubanc to Norwest Nortage endorsement was

invalid;

c.     a declaration that the purported Norwest to LaSalle endorsement was invalid;

d.     a declaration that the purported Wachovia Bank fka First Union National Bank as Trustee endorsement to LaSalle was invalid;

e.     a declaration that neither LaSalle nor BOA had any right to appoint eTitle as "successor trustee" under the Toones' Trust Deed,

f.     a declaration that the person who purported to execute the substitution of trustee did not have authority to execute said document such that neither eTitle nor anyone associated with eTitle was properly substituted as trustee under the Toones' Trust Deed,

g.     a declaration that neither LaSalle nor BOA had any rights as owner/endorsee of the Toone Note and therefore no rights as beneficiary under the Toones' Trust Deed,

h.     a declaration that LaSalle and BOA had no right to proceed to attempt to foreclose on the Toones' Trust Deed,

i.     a declaration that eTitle was never properly appointed and did not become a "successor trustee" or "substitute trustee" under the Toones' Trust Deed,

j.     a declaration that the Notices of Default and of Trustee's Sale signed by eTitle and recorded against the Toones Property were and are null and void,

k.     a declaration that the purported foreclosure sale conducted by eTitle was and is **null and void**;

l.     a declaration that the trustee's deed from eTitlel to BOA issued by eTitle  in connection with the purported "trustee's sale" is null and void and of no force or effect,

m.     a declaration that the Toones are still owners of the Toone Residence;

n.     a declaration that LaSalle, BOA, Lundberg Associates, Plotkin and Middlemas committed fraud on the bankruptcy court in connection with the Motion for Relief from Stay;

o.     a declaration that as a result of the foregoing, LaSalle and BOA were barred from proceeding to foreclose on the Toones Property, and that the purported trustee's sale is void and a nullity,

p.     a declaration that the Toones sent Wells Fargo one or more Qualified Written Requests under RESPA which Wells Fargo was required to address as required by RESPA,

q.     a declaration that Wells Fargo failed to properly respond to one or more of Toones's QWRs as required by RESPA,

r.     a declaration that as a result of (t), LaSalle and/or BOA were  barred from proceeding with the purported foreclosure on the Toones Property,

s.     a declaration that the purported foreclosure sale of the Toones Property by eTitle

        was void,

t.     a declaration that any and all transfers of title to the Toones Property to any of the

        Does 26-50 after the purported trustee's sale are all null and void.

## SECOND CLAIM FOR RELIEF
### Quiet Title

54.    The Toones incorporate all of the allegations of this complaint herein.

55.    Toones' Note and Trust Deed were and are invalid, illegal and unenforceable and *void ab*

        *initio*.

55.    None of the defendants are the owners of a valid trust deed and note on plaintiffs'

        property and therefore none of the defendants were entitled to foreclose upon the Toones'

        Trust Deed.

57.    Defendants have in violation of law and the trust deed and note attempted to appoint

        eTitle as  "successor trustee" under the Toones' Trust Deed.

58.    The person who purported to execute the substitution of trustee did not have authority to

        execute said document such that neither eTitle nor anyone associated with eTitle was

        properly substituted as trustee under the Toones' Trust Deed.

59.    Neither LaSalle nor BOA had any rights as beneficiary under the Toones' Trust Deed and

        had no right to proceed to attempt to foreclose on the Toones' Trust Deed.

60.    eTitle was never properly appointed and did not become a "successor trustee" or

"substitute trustee" under the Toones' Trust Deed.

61.  The Notices of Default and of Trustee's Sale signed by eTitle and recorded against the

     Toones Property were and are therefore **null and void**.

62.  Trustee's deed, if any, which have or may be issued by eTitle  in connection with any

     purported "trustee's sale" is null and void and of no force or effect.

63.  Trustee's Sale of the Toones Property by the defendants is null and void.

65.  Wells Fargo, LaSalle and BOA were required under federal law to modify the Toones'

     loan, but in violation of federal law failed to do so.

66.  LaSalle, BOA, Lundberg Associates, Plotkin and Middlemas committed fraud on the

     bankruptcy court in connection with the Motion for Relief from Stay in connection with

     Toones' bankruptcy and are also therefore barred from proceeding to foreclose on the

     Toones Property, such that the purported trustee's sale is void and a nullity.

67.  Toones sent Wells Fargo one or more Qualified Written Requests under RESPA which

     Wells Fargo was required to address as required by RESPA.

69.  The purported foreclosure sale of the Toones Property by eTitle is **null and void** and any

     and all purported transfers of title to the Toones Property to any of the Does 26-50 after

     said  purported trustee's sale are all **null and void**.

     WHEREFORE, since defendants have purported to have foreclosed on  plaintiffs'

property without owning a trust deed and note on plaintiffs' property, with a substitute trustee

fraudulently appointed, their purported foreclosure is **null and void** and **title should be quieted in Toones**, establishing their title to the Toones' Property against defendants and all others, quieting defendants' challenges and claims to title of Toones' Property.

### THIRD CAUSE OF ACTION
Breach of Duty - eTitle

70.    The Toones hereby incorporate herein all of the allegations of this complaint.

71.    A person appointed as a trustee pursuant to a Trust Deed owes a duty of good faith and reasonableness to the trustor.

72.    eTitle  owed a duty to the Toones not to accept the appointment as successor trustee and not to proceed to foreclose upon the The Toones Property under the circumstances described herein.

73.    The underlying documentation in Toones alleged foreclosure is incorrect and/or fraudulent in that defendants were not the owners of the Trust Deed, the amount claimed due was false, the successor trustee was not duly appointed and false and/or fraudulent in many other respects including appointment of eTitle.

74.    ETitle violated this duty by proceeding to give notices of default, a notice of trustees sale, and holding the purported trustee's sale.

75.    The Toones are each entitled to an award of his/her actual damages caused by ETitle' breach of duty in an amount to be established at the time of trial.

## FOURTH CAUSE OF ACTION
### Breach of Contract – Duty of Good Faith and Fair Dealing

76.     The Toones hereby incorporate herein all of the allegations of this complaint.

77.     The actions of Premier, Accubanc, Norwest, LaSalle and BOA as alleged herein

constitute a breach of contract and of the covenant of good faith and fair dealing.

78.     The Toones are entitled to the following relief as a result thereof:

    a.      an award of actual damages;

    b.      an award of exemplary damages;

    c.      an award of costs and attorneys' fees.

## FIFTH CAUSE OF ACTION
### Common Law Fraud

79.     The Toones incorporate herein all of the allegations of this complaint.

80.     Toones' Note and Trust Deed were and are invalid, illegal and unenforceable and *void ab initio*.

81.     None of the defendants are the owners of a valid trust deed and note on plaintiffs'

property and therefore none of the defendants may foreclose upon the Toones' Trust

Deed.

82.     Defendants know they are not in possession of a valid trust deed and note on Toones'

Property and that they misrepresented presently existing material facts to Toones, this

court and all interested parties in claiming they possessed a valid trust deed and note on

Toones' Property, eTitle had validly been appointed as successor trustee, the contractual provisions of the trust deed and note on Toones' Property had been complied with by defendants in their attempted foreclosure of Toones' Property.

83.     Defendants have knowingly and in violation of law and the trust deed and note attempted to appoint eTitle as  "successor trustee" under the Toones' Trust Deed and misrepresented a presently existing materially fact by claiming eTitle was duly appointed.

84.     Defendants have knowingly misrepresented a presently existing material fact by asserting the person who purported to execute the substitution of trustee did have authority to execute said document such that neither eTitle nor anyone associated with eTitle was properly substituted as trustee under the Toones' Trust Deed.

85.     Defendants have knowingly misrepresented a presently existing material fact in asserting LaSalle and BOA had rights as beneficiary under the Toones' Trust Deed and had the right to proceed to foreclose on the Toones' Trust Deed.

86.     Defendants' have knowingly made misrepresentations of presently existing material facts in claiming they conducted a valid Trustee's Sale of the Toones Property.

87.     LaSalle, BOA, Lundberg Associates, Plotkin and Middlemas committed fraud on the bankruptcy court in connection with the Motion for Relief from Stay in connection with Toones' bankruptcy and are also therefore barred from proceeding to foreclose on the Toones Property, and that any purported trustee's sale is void and a nullity.

88. Toones sent Wells Fargo one or more Qualified Written Requests under RESPA which Wells Fargo was required to address as required by RESPA.

89. Wells Fargo knowingly and deliberately failed to properly respond to one or more of Toones's QWRs as required by RESPA and are barred from proceeding with the purported foreclosure on the Toones Property.

WHEREFORE, defendants committed common law fraud by attempting to foreclose on Toones' Property by falsely stating they owned the trust deed and note on Toones' Property, by falsely stating they had duly appointed a substitute trustee, and seeking from Toones an amount which is not due and was not due these defendants. Toones are entitled to compensatory and punitive damages, costs and attorneys' fees.

## SIXTH CAUSE OF ACTION
### Violations of RESPA

90. The Toones hereby incorporate herein all of the allegations of this complaint.

91. Wells Fargo violated RESPA as outlined herein. Those violations were knowing and wilful and part of a pattern and practice of knowing and wilful RESPA violations by Wells Fargo. The Toones have suffered damages as a result in that (a) they were unable to get Wells Fargo to realize and admit that the Toones had not failed to make payments as agreed – given the fact that there was a trial modification in place, (b) the foreclosure proceeded unabated and wrongfully, ( c) they were forced to try to obtain some protection through a bankruptcy – which took a great deal of time and involved costs and fees, (d)

they suffered severe credit damage, (e) they were subjected to a fraudulent lift stay motion, (f) the foreclosure sale proceeded even though the statute barred Wells Fargo from taking any steps to collect the debt while any QWR remained outstanding and unresponded to, (g) the Toones experienced extreme frustration, anxiety, fear and emotional distress and (h) the Toones have been forced to incur legal costs and attorneys fees.

92.     In addition to the declaratory relief requested above, the Toones are entitled to an award of actual and full RESPA statutory damages per violation, costs and attorneys fees.

## RELIEF SOUGHT

Wherefore, the Toones pray for relief against the defendants as follows:

A.      Against all defendants, for the declaratory relief identified in the First Cause of Action.

B.      That title to their property be quited in Toones as sole owners, with defendants to have no interest in title, quieting defendants' claims to be owners.

C.      Against LaSalle, BOA, Wells Fargo, Lundberg, Plotkin, Middlemas, Gunnerson, DeHann and Brigham Lundberg for breach of duty, breach of contract, common law fraud as follows:

    a.      Judgment in favor of each of the Toones and against each of these defendants for actual damages – including without limitation damages for emotional distress, anxiety, in an amount to be proven at trial; punitive damages in an amount to be

determined at trial; costs of suit and attorneys' fees.

D.      Against Premier, Accubanc, Norwest, LaSalle and BOA for breach of duty, breach of

contract, common law fraud as follows:

      a.      an award of actual damages as outlined above;

      b.      an award of exemplary damages;

      c.      an award of costs and attorneys' fees.

E.      Against Wells Fargo for breach of duty, breach of contract, common law fraud and

violation of RESPA as follows:

      a.      an award of RESPA statutory damages at enhanced levels

      b.      an award of actual damages;

      c.      an award of costs and attorneys fees.

F.      For costs and attorneys' fees.

G.      For such other relief as the Court deems just and appropriate.

### TRIAL BY JURY IS DEMANDED

Dated this 14th day of October, 2011.

**Steffensen ❖ Law ❖ Office**

  /s/ Brian W. Steffensen
Brian W. Steffensen